UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEECO LLC, ZAHNER DESIGN GROUP, LTD., and HOOKLESS SYSTEMS OF NORTH AMERICA, INC.<br><br>       Plaintiffs,<br><br>v.<br><br>KARTRI SALES COMPANY, INC.<br><br>       Defendant. | Civil Action No.: |

**COMPLAINT**

Plaintiffs Keeco LLC, Zahner Design Group, Ltd. ("ZDG"), and Hookless Systems of North America, Inc. ("HSNA") (collectively "Keeco" or "Plaintiffs") by their attorneys, hereby complain of Defendant Kartri Sales Company, Inc. ("Kartri"), as set forth below.

**JURISDICTION AND VENUE**

1. This is an action for trademark infringement and unfair competition under federal law and the laws of the State of New York. This Court has jurisdiction over the federal claims of this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1338. The Court also has jurisdiction under 28 U.S.C. §1332 in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states. The Court also has jurisdiction over the state claims under 28 U.S.C. §1338(b), and pursuant to its supplemental jurisdiction under 28 U.S.C. §1367. The state claims asserted herein are so related to the federal claims as to form part of the same case or controversy.

2. This action arises from Kartri's manufacture, use, importation, offer for sale, and/or sales of products that infringe Plaintiffs' trademark rights, including Plaintiffs' trade dress.

3. This action is related to 1:15-cv-10154 (PAE) previously filed within this district (which was consolidated with Civil Action No. 1:15-cv-05108 (PAE)). That prior case being referred to herein as the "*Focus v. Kartri case*" or "*Kartri I*."

4. This Court has personal jurisdiction over Kartri in that Kartri has engaged in acts constituting doing business in the State of New York, including in this judicial district and have intentionally directed its tortious activities toward the State of New York, including this judicial district. Kartri has committed acts of intellectual property infringement in New York, including this judicial district, and has delivered the accused products into the stream of commerce with the expectation that they will be purchased and used by consumers in the State of New York, including this judicial district. Kartri has sold or offered for sale products, including products that are the subject of this Complaint, to consumers in the State of New York, including this judicial district. The Court also has personal jurisdiction due to the fact that Kartri consented to jurisdiction here, and also waived or forfeited objections thereto, in *Kartri I*, and the present action involves the same trade dress rights as in that action.

5. Venue is proper in this district in that Kartri are corporations subject to personal jurisdiction within this judicial district, and deemed to reside in this district, pursuant to 28 U.S.C. §§ 1391(b) - (d), and in that Kartri has committed acts of infringement in this district.

**THE PARTIES**

6. Plaintiff Zahner Design Group, Ltd. ("ZDG") is a corporation organized and existing under the laws of the State of New York having a principal place of business at 179 Christopher Street, New York, New York 10014. ZDG is the owner of the rights, including the intellectual property, trade dress, and trademark rights (with the term "trademark rights" including trade dress rights), that is the subject of this Complaint.

7. Plaintiff Hookless Systems of North America, Inc. ("HSNA") is a corporation organized and existing under the laws of the State of New York having a principal place of business at 179 Christopher Street, New York, NY 10014. HSNA is ZDG's licensee of the intellectual property that is the subject of this Complaint.

8. Plaintiff Keeco LLC ("Keeco") is a California limited liability company located at 390 Fifth Avenue, 2nd Floor, New York, New York 10018.

9. Keeco is the exclusive licensee of HSNA for the intellectual property in, *inter alia*, the field of shower curtains for sales to hospitality channels.

10. Keeco is also the successor-in-interest to the intellectual property rights previously licensed by HSNA to Arcs and Angles, Inc., Arcs and Angles, LLC, Focus Products Group International LLC, SF Home Décor, LLC, Sure Fit Home Décor Holdings Corp., Sure Fit Home Products, LLC, and Hollander Sleep & Décor.

11. Defendant Kartri Sales Company, Inc. ("Kartri") is a corporation organized and existing under the laws of the State of Pennsylvania having a principal place of business at 100 Delaware Street PO Box 126, Forest City, PA 18421. Kartri makes, sells, and distributes shower curtains for sale in the United States, including the accused products.

## FACTS

## KARTRI'S INFRINGEMENT OF
## PLAINTIFFS' TRADE DRESS RIGHTS

12. Plaintiffs own valuable trademark rights to their products.

13. Those rights include trade dress rights to the shower curtain products sold and licensed by Plaintiffs, including Keeco's predecessors-in-interest.

14. Plaintiffs' trade dress rights are to the visual appearance of their shower curtain products, which provide the visual appearance of:

   a. a shower curtain wherein the curtain lacks any hooks protruding above the upper edge of the curtain, so that Plaintiffs' shower curtain provides the visual appearance of an essentially "neat" and "orderly" upper edge;

   b. and wherein the shower curtain has a row of rings along the upper portion of the shower curtain, those rings being attached to the material of the shower curtain such that the bottom surface of each ring (on one or both sides of the shower curtain) is essentially co-planar with the material of the shower curtain, also providing an essentially "neat" and "orderly" appearance;

   c. wherein each ring includes a slit or gap in the ring;

   d. and wherein the shower curtain's rings or pairs of rings, and the associated slits or gaps, are each fixed in place on the shower curtain and provide an organized and symmetrical repeating visual pattern along the top width of the shower curtain.

15. The combination and arrangement of the design elements set forth above constitute the trade dress owned by Plaintiffs.

16. Examples of Plaintiffs' trade dress were provided during discovery and at trial in *Kartri I*.

17. These included, but were not limited to, examples of Plaintiffs' "horizontal slit" products, i.e., those versions of Plaintiffs' trade dress including a horizontal slit between pairs of rings in the shower curtain.

18. As this Court previously adjudicated in *Kartri I*, Plaintiffs' trade dress definition recites in specific detail the characteristics of the trade dress in a manner which is sufficiently precise to meet the requirements of law.

19. As this Court also adjudicated, Plaintiffs' trade dress is legally non-functional; Plaintiffs' trade dress has accrued secondary meaning; and Plaintiffs' trade dress is not generic.

20. All of those adjudications, including the bases therefor are incorporated herein by reference. *See e.g., Kartri I*, Dkt. 501, Opinion and Order of December 22, 2022 ("Opinion and Order").

21. Those adjudications are legally binding on Kartri in this case.

22. As such, Plaintiffs' trade dress is enforceable against Kartri here.

23. Plaintiffs have created their designs, including their trade dress, and have extensively marketed, promoted, and sold their products, including their associated trademarks and trade dress, through extensive time, labor, skill, and money.

24. As a result thereof, Plaintiffs' products have been extensively sold throughout the United States, and, have become an extremely popular shower curtain design, including, the leading shower curtain in the hospitality market.

25. Plaintiffs' trademarks, trade dress, and associated intellectual property and goodwill directed to its shower curtain products, are valuable assets of Plaintiffs.

26. Kartri has previously sold, and continues to sell, products that are intended to copy, imitate, or mimic, Plaintiffs' trade dress.

27. In *Kartri I*, the Court ruled that Kartri infringed Plaintiffs' trade dress via Kartri's sales of its "Ezy Hang" products.

28. Years after introduction of the Ezy Hang product, Kartri introduced a new product which it has called its "Hang2it" or "teardrop" product.

29. Some images of the "Hang2it" product are shown in Exhibit 1.

30. As shown in Exhibit 1, the Hang2it product falls directly within the scope of Plaintiffs' trade dress definition set forth above.

31. As such, the Hang2it product infringes Plaintiffs' trade dress rights.

32. Upon information and belief, Kartri has also sold flat-topped versions of the "Hang2it" product.

33. An image of one of the flat-topped "Hang2it" products is provided in Exhibit 2.

34. Kartri's flat-topped versions of the product also fall directly within the scope of Plaintiffs' trade dress definition set forth above.

35. They are also an infringement of Plaintiffs' trade dress rights.

36. Kartri's sales of the accused products also constitute unfair competition.

37. Based on the relevant facts adjudicated in *Kartri I* (including, for example, the strong trademark rights that Plaintiffs have accrued from their extensive and extremely successful use of their trade dress in commerce, the lack of a gap between Plaintiffs' and Kartri's products, and the nature of the products and purchasers), along with the high degree of similarity of the accused products herein to Plaintiffs' trade dress, along with Kartri's bad faith in <u>again</u> copying Plaintiffs' trade dress, there is a likelihood of confusion between Plaintiffs' trade dress and Kartri's accused products.

38. Kartri's accused products were introduced to trade off of the good will, secondary meaning, and success that Plaintiffs had accrued in Plaintiffs' trade dress and products, and in the marketplace.

39. Kartri uses Plaintiffs' trade dress to confuse, cause mistake, and deceive customers and users into believing that Kartri's goods originate from, are sponsored by, or are approved by, Plaintiffs, and/or that Kartri is affiliated with, connected with, or associated with, Plaintiffs, and Kartri's activities poses a likelihood of such confusion, mistake, and/or deception.

**WILLFUL INFRINGEMENT**

40. Kartri was well aware of Plaintiffs' trade dress, and deliberately chose to make, import, use, offer for sale, and sell, products intended to copy or imitate that trade dress.

41. Kartri was well aware of Plaintiffs' asserted trade dress, long before Kartri introduced its accused products.

42. Kartri was fully on notice of Plaintiffs' assertion of trade dress rights in connection with the *Kartri I* case.

43. Knowing of Plaintiffs' trade dress rights, Kartri intentionally introduced products meant to imitate Plaintiffs' trade dress.

44. In fact, Kartri long knew of Plaintiffs' "horizontal slit" product versions of Plaintiffs' trade dress even before the *Kartri I* case.

45. Kartri also admitted in *Kartri I* that Plaintiffs' "horizontal slit" products are famous in the hospitality industry.

46. As a result, Kartri introduced its Hang2it to imitate Plaintiffs' "horizontal slit" products.

47. Kartri's acts have been and are without license or authority of Plaintiffs.

48. Kartri's infringing activities have been and are deliberate and willful.

49. Kartri's Hang2it product is currently being sold in commerce.

50. Upon information and belief, Kartri's flat-topped "Hang2it" products were previously sold in commerce.

51. On January 23, 2023, Plaintiffs sent Kartri a cease and desist letter notifying Kartri that its ongoing sales of the Hang2it product infringes Plaintiffs' trade dress rights.

52. A copy of that cease and design letter is attached hereto as Exhibit 3.

53. In response, Kartri refused to desist from sales of the Hang2it product.

54. Kartri's infringing conduct is with full knowledge of the adjudication of the Court in the Opinion and Order in *Kartri I*, and the Court's rulings in *Kartri I* as to the scope and enforceability of Plaintiffs' trade dress rights.

55. In communications and court filings since the cease and desist letter of Exhibit 3, Kartri and its counsel have provided no rebuttal to the fact that the Hang2it product falls directly within the scope of Plaintiffs' trade dress rights.

56. Despite all of this, Kartri has brazenly continued its infringement.

57. Furthermore, in *Kartri I* the Court entered an injunction barring Kartri from infringing Plaintiffs' trade dress.

58. Kartri has nonetheless proceeded with its sales of the accused products, and refuses to stop.

59. Kartri is proceeding with reckless disregard of an objectively high risk that it is infringing Plaintiffs' trademark rights and violating the Court-Ordered injunction.

60. Kartri is also engaging in willful blindness regarding Plaintiffs' trademark rights and the Court-Ordered injunction, and regarding its accused products' infringement of Plaintiffs' trademark rights and violation of the Court-Ordered injunction, and has recklessly chosen to continue to make, use, offer for sale, sell, and/or import the accused products.

61. Kartri's actions constitute willful infringement, and qualify for enhanced damages under 35 U.S.C. §284.

62. Kartri's actions also consitute civil contempt of Court.

63. Kartri's bad faith activities have caused and will continue to cause a likelihood of deception and confusion in the marketplace among consumers, and of extensive damage to Plaintiffs and their business, goodwill, and reputation.

64. Kartri has illegally profited, and are illegally profiting, from their infringements of Plaintiffs' rights, in bad faith.

65. Kartri's actions have caused and are causing irreparable harm to Plaintiffs.

66. Plaintiffs have been damaged by Kartri's activities and will continue to be damaged unless Kartri is restrained and enjoined by this Court.

67. Plaintiffs have no adequate remedy at law.

68. Plaintiffs have been damaged by Kartri's illegal actions in an amount to be determined by this Court, including recovery and relief for Plaintiffs' lost sales, lost profits, price erosion, and damage to Plaintiffs' reputation and good will, and/or a disgorgement of Kartri's revenues and profits.

## DAMAGES

69. Plaintiffs are being irreparably harmed by Kartri's infringing activities, and have no adequate remedy at law.

70. Plaintiffs have been extensively damaged by Kartri's intellectual property infringement in an amount to be determined by this Court.

71. Plaintiffs seek damages as a result of Kartri's infringement which include, but are not limited to: Plaintiffs' lost sales, lost profits, price erosion, and damage to their reputation and good will; and/or disgorgement of Kartri's revenues and profits; from Kartri's sales of infringing products, associated parts thereof, and from convoyed sales.

72. Plaintiffs request that this honorable Court assess enhanced damages against Kartri in the fullest amount permissible by law, including, but not limited to, treble damages under federal law, and punitive damages under New York law, in view of the willful, egregious, malicious, and extensive nature of Kartri's bad faith activities complained of herein, and in view of the numerous violations, and the willful nature of

the violations – *now repeated again by Kartri for the second time* – and the significant damage to Plaintiffs, as set forth above.

73. Plaintiffs further request enforcement of the injunction previously entered by the Court against the Hang2it it product, to bar further acts by Kartri infringing Plaintiffs' rights under federal and/or New York law, absent which Kartri's willful violations complained of herein will all continue.

74. Plaintiffs further request that Kartri be held in civil contempt for its bad faith violation of the injunction entered into by the Court in the *Kartri I* action.

## COUNT I
## LANHAM ACT TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITION
## 15 U.S.C. §1125(a)

75. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs, as if fully set forth herein.

76. This claim arises under the Lanham Act, 15 U.S.C. §1051 et seq.

77. This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1331.

78. Kartri is intentionally using trade dress in its accused shower curtain products which is confusingly similar to Plaintiffs' trade dress, in a manner that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Kartri with Plaintiffs, or as to the origin, sponsorship, or approval of Kartri's goods by Plaintiffs.

79. Kartri's activities set forth herein constitute unfair competition, false designation of origin, and false description and representations, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

80. Kartri's activities also constitute a violation of the Court-Ordered injunction entered in the *Kartri I* case.

81. Kartri's acts of infringement, and its violation of the Court Order, were and are willful and deliberate.

82. Kartri has profited from their illegal and bad faith activities.

83. Plaintiffs have suffered, and continue to suffer, substantial damages as a result of Kartri's bad faith activities, in an amount to be determined by this Court.

## COUNT II
## NEW YORK COMMON LAW OF UNFAIR COMPETITION

84. Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs, as if fully set forth herein.

85. This claim arises under the common law of the State of New York. *See e.g., Luv n' care, Ltd. v. Walgreen Co.*, 695 F. Supp. 2d 125, 135 (S.D.N.Y. 2010).

86. This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1367.

87. Plaintiffs have created their marks and designs, including their trade dress, and have extensively marketed, promoted, and sold their products, including their associated designs and trade dress, through extensive time, labor, skill, and money.

88. Kartri has engaged in unfair competition under New York common law by Kartri's bad faith misappropriation of the labors and expenditures of Plaintiffs, which is likely to cause confusion or to deceive purchasers as to the origin of Kartri's goods.

89. Kartri has misappropriated business value of Plaintiffs, and have misappropriated the results of Plaintiffs' labor and skill and the expenditures of Plaintiffs, by marketing and selling goods that are confusingly similar to the designs and marks of Plaintiffs' goods, including Plaintiffs' trade dress in those goods.

90. Kartri has used trade dress that are confusingly similar to Plaintiffs' trade dress, for the same type of goods, and has done so in bad faith.

91. Kartri has used those marks, designs, and trade dress, in competition with Plaintiffs, gaining an unfair advantage, because Kartri bore little or no burden of expense of Plaintiffs' creation, development, marketing, and promotion of those marks, designs, trade dress, and goods.

92. Kartri has engaged in bad faith misappropriation of Plaintiffs' labors in Plaintiffs' creating, marketing, promoting, and selling of their products bearing their designs and trade dress, which misappropriation is likely to cause confusion, to deceive purchasers as to the origin of the goods, and to dilute the value of Plaintiffs' designs and trade dress and the value of Plaintiffs' products bearing the same.

93. Kartri's bad faith activities are intended to copy or mimic the trade dress associated with Plaintiffs, and to copy and mimic the same.

94. Kartri's actions have caused significant commercial damage to Plaintiffs.

95. Kartri's activities also constitute a violation of the Court-Ordered injunction entered in the *Kartri I* case.

96. Kartri's conduct is illegal and actionable under the common law of unfair competition of the State of New York.

97. Plaintiffs have been injured by Kartri's illegal actions, and are entitled to the remedies provided under New York law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court, upon final hearing of this matter, grant the following relief against Kartri:

A. That Kartri be adjudged to have engaged in unfair competition and trademark infringement under Section 43 of the Lanham Act, 15 U.S.C. §1125;

B. That Kartri be adjudged to have engaged in trademark infringement and unfair competition under the common law of the State of New York.

C. That Kartri, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Kartri be preliminarily and permanently enjoined from offering for sale, selling or marketing merchandise that copies or imitates any of Plaintiffs' trademark rights, including, Plaintiffs' trade dress, be preliminarily and permanently enjoined from offering for sale, selling or marketing merchandise that tends in any way to deceive, mislead or confuse the public into believing that Kartri's merchandise in any way originates with, is sanctioned by, or is affiliated with Plaintiffs; and be preliminarily and permanently enjoined from engaging in any activities violating Plaintiffs' rights under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and the common law of the State of New York;

D. That each of Kartri, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation

with Kartri be preliminarily and permanently enjoined from otherwise competing unfairly with Plaintiffs;

E. That each of Kartri, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Kartri be preliminarily and permanently enjoined from engaging in any and all further deceptive and unfair business practices with respect to Plaintiffs;

F. That each of Kartri, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with Kartri be preliminarily and permanently enjoined from engaging in further acts infringing Plaintiffs' rights under federal and/or N.Y. law;

G. That each of Kartri, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation therewith be held in civil contempt for violating the Court-Ordered injunction in *Kartri I*;

H. That Kartri be directed to promptly file with this Court and serve on Plaintiffs, a report in writing, under oath, setting forth in detail the manner and form in which the Kartri has complied with the injunction;

I. That Kartri be required to deliver up for impoundment during the pendency of this action, and for destruction thereafter, all copies of the infringing materials in its possession or under its control and all materials, including molds and master models, used for making same;

J.     That Kartri be required to account for and pay over to Plaintiffs any and all revenues and profits derived by it and all damages sustained by Plaintiffs by reason of the acts complained of in this Complaint, including an assessment of interest on the damages so computed, and that the damages be trebled, pursuant to 15 U.S.C. §1117 and all further applicable federal and state law;

K.     That Kartri be required to account for and pay over to Plaintiffs such actual damages as Plaintiffs have sustained as a consequence of Kartri's infringement; that the damages relating to trade dress infringement be trebled pursuant to 15 U.S.C. §1117; and that any and all damages likewise be enhanced to the maximum available under all applicable federal and New York law; and that Kartri be required to account for and pay to Plaintiffs all of Kartri's gains, revenues, profits and advantages attributable to or derived by Kartri's infringement;

L.     That each such award of damages be enhanced to the maximum available for each infringement in view of Kartri's willful infringement of Plaintiffs' rights;

M.     That Plaintiffs be awarded punitive or exemplary damages under New York law because of the egregious, malicious, and tortious conduct of Kartri complained of herein;

N.     That Plaintiffs recover the costs of this action including their expenses and reasonable attorneys' fees pursuant to 15 U.S.C. §1117 and all further applicable law, because of Kartri's continuing willful infringement in bad

faith, and Kartri's violation of the Court-Ordered injunction in *Kartri I*, which make this an exceptional case warranting such award;

O. That Plaintiffs be awarded pre- and post-judgment interest, and costs;

P. That Plaintiffs obtain all further relief permitted under the laws of the United States and the State of New York; and,

Q. That Plaintiffs obtain all such other and further relief as the Court may deem just and equitable.

Dated: March 8, 2023                */s/ Morris E. Cohen*
                                                Morris E. Cohen (MC-4620)
                                                Lee A. Goldberg (LG-9423)
                                                Limor Wigder (LW-1986)
                                                GOLDBERG COHEN LLP
                                                1350 Avenue of the Americas, 3rd Floor
                                                New York, New York 10019
                                                (646) 380-2087 (phone)
                                                (646) 514-2123 (fax)
                                                MCohen@GoldbergCohen.com
                                                LGoldberg@GoldbergCohen.com
                                                LWigder@GoldbergCohen.com