**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KEECO LLC, ZAHNER DESIGN GROUP, LTD., and HOOKLESS SYSTEMS OF NORTH AMERICA, INC., | 23 Civ. 02003 (PAE) (SDA) |
| Plaintiffs, | |
| v. | |
| KARTRI SALES COMPANY, INC., | |
| Defendant. | |

**DEFENDANT KARTRI'S MOTION TO DISMISS FOR LACK OF STANDING AND FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...........................................................................................(ii)

TABLE OF EXHIBITS .................................................................................................(vi)

I.     BACKGROUND ...................................................................................................1

II.    ARGUMENT ........................................................................................................7

        A.     Legal Standard ..........................................................................................7

        B.     Plaintiffs Fail to Allege a Proper Trade Dress Claim ...............................8

                1.     The Complaint Does Not Plead the Essential Element of Distinctiveness. .................................................................................9

                2.     The Complaint Does Not Plead the Essential Element of Nonfunctionality. ...........................................................................11

                3.     The Complaint Does Not Plead the Essential Element of Likelihood of Confusion .......................................................15

        C.     Plaintiffs Fail to Allege a Proper Unfair Competition Claim ................18

        D.     Plaintiffs Fail to Adequately Allege Standing .......................................20

        E.     Amendment Would Be Futile ................................................................22

        F.     Plaintiffs' Trade Dress Should Be Held Invalid as a Matter of Law ....................23

III.    CONCLUSION...................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Kimberly-Clark Corp.*,
570 F. App'x 927 (Fed. Cir. 2014) ..................................................................................1

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................................8, 19

*Becton Dickinson & Co. v. C.R. Bard, Inc.*,
922 F.2d 792 (Fed. Cir. 1990)......................................................................................14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................................8

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
489 U.S. 141 (1989)........................................................................................................8

*Bubble Genius LLC v. Smith*,
239 F. Supp. 3d 586 (E.D.N.Y. 2017) .....................................................................18, 19

*Bus. Trends Analysts v. Freedonia Grp., Inc.*,
650 F. Supp. 1452 (S.D.N.Y. 1987).............................................................................20

*Cadbury Beverages v. Cott Corp.*
73 F.3d 474 (2d Cir. 1996), *superseded on other grounds by statute as*
*recognized in Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97
(2d Cir. 2009)................................................................................................................15

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
11 F. Supp. 3d 317 (E.D.N.Y. 2014) ...........................................................15, 16, 19, 20

*CES Publ'g Corp. v. St. Regis Publ'ns, Inc.*,
531 F.2d 11 (2d Cir. 1975)............................................................................................24

*Conte v. Newsday, Inc.*,
No. 06–CV–4859 (JFB) (ETB), 2013 WL 978711 (E.D.N.Y. Mar. 13, 2013) .......................15

*Crescent Tool Co. v. Kilborn & Bishop Co.*,
247 F. 299 (2d Cir. 1917) ..........................................................................................8, 9

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005).....................................................................................14

*DEP Corp. v. Interstate Cigar Co.*,
622 F.2d 621 (2d Cir. 1980)..........................................................................................20

*Elements/Jill Schwartz, Inc. v. Gloriosa Co.*,
    No. 01 Civ. 904(DLC), 2002 WL 1492197 (S.D.N.Y. July 15, 2002) ................................... 18

*Eliya, Inc. v. Steven Madden, Ltd.*,
    749 F. App'x 43 (2d Cir. 2018) ................................................................................................. 18

*Ellis v. Chao*,
    336 F.3d 114 (2d Cir. 2003) ....................................................................................................... 8

*Eyal R.D. Corp. v. Jewelex New York Ltd.*,
    784 F. Supp. 2d 441 (S.D.N.Y. 2011) ..................................................................................... 19

*Foman v. Davis*,
    371 U.S. 178 (1962) .................................................................................................................... 8

*Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*,
    111 F.3d 993 (2d Cir. 1997) ............................................................................................... 11, 25

*Gilead Scis., Inc. v. Natco Pharma Ltd.*,
    753 F.3d 1208 (Fed. Cir. 2014) ............................................................................................... 22

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
    58 F.3d 27 (2d Cir. 1995) ......................................................................................................... 24

*Jones v. New York State Div. of Military & Naval Affairs*,
    166 F.3d 45 (2d Cir.1999) ........................................................................................................... 8

*Kaufman & Fisher Wish Co., Ltd. v. F.A.O. Schwarz*,
    184 F. Supp. 2d 311 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 335 (2d Cir. 2002) ........................ 9

*Kellogg Co. v. Nat'l Biscuit Co.*,
    305 U.S. 111 (1938) .............................................................................................................. 22, 23

*Malaco Leaf, AB v. Promotion In Motion, Inc.*,
    287 F. Supp. 2d 355 (S.D.N.Y. 2003) ......................................................................... 10, 11, 25

*Muller-Paisner v. TIAA*,
    289 F. App'x 461 (2d Cir. 2008) ............................................................................................... 1

*Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*,
    874 F.2d 95 (2d Cir. 1989) ....................................................................................................... 10

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
    164 F.3d 736 (2d Cir. 1998) ..................................................................................................... 10

*Omicron Cap., LLC. v. Omicron Cap., LLC.*,
    433 F. Supp. 2d 382 (S.D.N.Y. 2006) ..................................................................................... 19

*Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*,
   No. 17-cv-0957 (ADS)(AKT), 2017 WL 1954805 (E.D.N.Y. May 10, 2017) ...............11, 25

*Playtex Prods., Inc. v. Georgia–Pacific Corp.*,
   390 F.3d 158 (2d Cir. 2004).........................................................................15, 16, 17

*Pub. Free Will Corp. v. Verizon Commc'ns Inc.*,
   No. 15-CV-6354(RRM) (JO), 2017 WL 1047330 (E.D.N.Y. Mar. 17, 2017) .......................16

*Schieffelin & Co. v. Jack Co. of Boca, Inc.*,
   No. 89 Civ. 2941 (PKL), 1992 WL 156560 (S.D.N.Y. June 28, 1992).................................20

*Scott Paper Co. v. Marcalus Mfg. Co.*,
   326 U.S. 249 (1945)................................................................................................22

*Sears, Roebuck & Co. v. Stiffel Co.*,
   376 U.S. 225 (1964)........................................................................................3, 22, 23

*Singer Mfg. Co. v. June Mfg. Co.*,
   163 U.S. 169 (1896)..........................................................................................22, 23

*SmithKline Beecham Corp. v. Apotex, Corp.*,
   439 F.3d 1312 (Fed. Cir. 2006)...............................................................................14

*Sulzer Mixpac AG v. A&N Trading Co.*,
   988 F.3d 174 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1359 (2022)...........................11, 12, 14

*Sulzer Mixpac AG v. DXM Co., Ltd.*,
   No. 19 Civ. 9404 (LAP), 2022 WL 4280343 (S.D.N.Y. Sept. 15, 2022)........................14, 15

*Sure Fit Home Prods., LLC v. Maytex Mills, Inc.*,
   No. 21 Civ. 2169 (LGS), 2021 WL 2134863 (S.D.N.Y. May 26, 2021), *aff'd*,
   No. 2021-2048, 2022 WL 1073209 (Fed. Cir. Apr. 11, 2022) .............................12, 13, 14, 24

*TechnoMarine SA v. Jacob Time, Inc.*,
   No. 12 CIV. 0790 KBF, 2012 WL 2497276 (S.D.N.Y. June 22, 2012)...................................1

*TrafFix Devices, Inc. v. Mktg. Displays, Inc.*,
   532 U.S. 23 (2001)................................................................................8, 11, 12, 13

*Wal-Mart Stores, Inc. v. Samara Bros., Inc.*,
   529 U.S. 205 (2000)...............................................................................................9, 10

*Whiteside v. Hover-Davis, Inc.*,
   995 F.3d 315 (2d Cir. 2021)........................................................................................8

*Wonderful Co. LLC v. Nut Cravings Inc.*,
   No. 1:21-cv-03960 (MKV), 2022 WL 4585344 (S.D.N.Y. Sept. 29, 2022) ................9, 17, 18

*Yurman Design, Inc. v. PAJ, Inc.*,
   262 F.3d 101 (2d Cir. 2001)...........................................................................................9, 10, 12

**Statutes and Rules**

Federal Rule of Civil Procedure 11 ...............................................................................................11

Federal Rules of Civil Procedure 12(b)(1)......................................................................................1

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................1, 7, 24

Federal Rule of Civil Procedure 12(b)(7) .....................................................................................21

Lanham Act, 15 U.S.C. § 1125(a) ...........................................................................7, 8, 15, 16, 18

**Patents**

U.S. Patent No. 2,831,538.........................................................................................................2, 6

U.S. Patent No. 3,388,734............................................................................................................2

U.S. Patent No. 4,843,675............................................................................................................2

U.S. Patent No. 5,186,232.........................................................................................3, 5, 6, 13, 14

U.S. Patent No. 6,494,248............................................................................................3, 6, 13, 14

U.S. Patent No. 7,296,609.......................................................................................................3, 6

U.S. Patent No. 8,235,088.......................................................................................................3, 6

U.S. Patent No. D746,078........................................................................................................3, 6

U.S. Patent No. D823,097........................................................................................................3, 6

**TABLE OF EXHIBITS**

Exhibit 1      A true and correct copy of an Ex Parte Reexamination Certificate for United
               States Patent D746,078, issued February 28, 2023.

Exhibit 2      A true and correct capture of the website accessible at
               https://www.kartri.com/products.html accessed by counsel on March 30, 2023.

Exhibit 3      A chart prepared by Kartri's counsel, identifying and summarizing information on
               publicly accessible websites advertising the sale of various sellers' hook-free
               shower curtain products, all accessed by counsel in March 2023.

Exhibit 4      A true and correct capture taken from publicly accessible website
               https://www.amazon.com – specifically, the first page of results returned when
               the phrase "hookless shower curtains" was entered into the website's search bar.
               As reflected on the document, the query was run by counsel on March 29, 2023.

Defendant Kartri Sales Company, Inc. ("Kartri") hereby respectfully moves this Court, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for an Order dismissing this action in its entirety because the Complaint is defective and the asserted trade dress is now invalid.[1]

## I.   BACKGROUND

This case concerns shower curtains which are hung from their rods using built-in rings instead of external hooks.  Curtains relying on built-in rings or grommets instead of external hooks are widely available, as illustrated by the below images, taken from public online archives of IKEA catalogs:

| IKEA 1996 Catalog, p.184 | IKEA 1999 Catalog, p.134 |
|---|---|
|  |  |
| https://ikeamuseum.com/en/digital/ikea-catalogues-through-the-ages/1990s-ikea-catalogues/1996-ikea-catalogue/[2] | https://ikeamuseum.com/en/digital/ikea-catalogues-through-the-ages/1990s-ikea-catalogues/1999-ikea-catalogue/ |

These "grommet curtains" would be hung by detaching the curtain rod or support from its place on the wall, threading the curtain onto it, and reconnecting the rod to the wall.  As can be

---

1.  This Court has deemed this case a "related case" to Case No. 15-Civ-10154, *Focus Products Group International LLC et. al. v. Kartri Sales Co., Inc. and Marquis Mills International, Inc.*  As discussed more fully in Section II.D., *infra*, the two lawsuits name different collections of entities as plaintiffs.  For convenience, Kartri will refer to the plaintiffs in both cases collectively as "Plaintiffs."

2.  On a motion to dismiss, the Court may "consider matters of which judicial notice may be taken," including "the fact that a publicly accessible website contains certain information." *TechnoMarine SA v. Jacob Time, Inc*., No. 12 CIV. 0790 KBF, 2012 WL 2497276, at *1 n.1 (S.D.N.Y. June 22, 2012); see also *Muller-Paisner v. TIAA*, 289 F. App'x 461, 466 n.5 (2d Cir. 2008) ("Judicial notice may be taken of the defendants' website for the fact of its publication.").  "It is also well-established that a court may take judicial notice of patents or patent applications." *Anderson v. Kimberly-Clark Corp.,* 570 F. App'x 927, 932 (Fed. Cir. 2014).

seen in the above photos, grommet curtains have a row of rings along the upper portion, the rings being attached to the material of the curtain such that the bottom surface of each ring is co-planar with the material of the shower curtain.  In addition, the curtain rings are each fixed in place and provide an organized and symmetrical repeating visual pattern along the top width of the shower curtain.  Grommet curtains lack any hooks protruding above the upper edge of the curtain, because they are hung on the curtain rod without hooks.

Grommet curtains are an old technology, and many patents exist reflecting improvements in their design over the years.  For example, the below image is from U.S. Patent No. 3,388,734 (issued June 18, **1968**, accessible at https://patents.google.com/patent/US3388734A) entitled "Devices for Hanging and Gathering Slidable Curtains."



**U.S. Patent No. 3,388,734**

Fig. 1

*See also,* for example, U.S. Patent No. 4,843,675 (issued July 4, 1989, accessible at https://patents.google.com/patent/US4843675A), disclosing a curtain grommet "for supporting lightweight curtains for sliding on a rod;" and U.S. Patent No. 2,831,538 (issued April 22, 1958, accessible at https://patents.google.com/patent/US2831538A), disclosing grommet curtains with rings that contain a vertical slit running through the top of the ring and the curtain, so that "[i]n removing or hanging the curtains or drapes on a rod, the slit is pulled open, and the curtain pulled away or mounted on the rod."  (col. 1, ll. 35-55).

2

In 1993, Plaintiffs obtained a U.S. Patent, Patent No. 5,186,232 (the "'232 Patent"), for a grommet curtain that did not require threading onto the curtain rod, the curtain instead being placed on the rod via horizontal slits between pairs of rings on the curtain.  Plaintiffs enjoyed a full term of utility patent protection—ending in 2010—for their horizontal slit design, as patentees are entitled to do.

What patentees are *not* entitled to do, however, is extend their protection indefinitely through claims of trademarks and trade dress in order to exclude competitors from using once-patented technology that has moved into the public domain. *See Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 231 (1964).  That is what these Plaintiffs are now attempting.

**Plaintiffs' EZY Hang Lawsuit**

In 2015, Plaintiffs filed two separate lawsuits against Kartri for products called EZY Hang that Kartri was then making.  The lawsuits were consolidated into one case (15-CV-10154, the "EZY Hang Case") and tried before this Court.  Together, the lawsuits asserted (1) three utility patents for improvements/variations on the invention disclosed in the '232 Patent: U.S. Patent Nos. 6,494,248 (the "'248 Patent"), 7,296,609 (the "'609 Patent"), and 8,235,088 (the "'088 Patent"); (2) a design patent, U.S. Patent No. D746,078, which has since been cancelled by the USPTO as invalid and void *ab initio* (*see* Exhibit 1 hereto); (3) registered and unregistered trademarks; and (4) an unregistered trade dress described as:

> (1) a shower curtain wherein the curtain lacks any hooks protruding above the upper
> edge of the curtain, so that Plaintiffs' shower curtain provides the visual appearance
> of an essentially "neat" and "orderly" upper edge;
>
> (2) and wherein the shower curtain has a row of rings along the upper portion of
> the shower curtain, those rings being attached to the material of the shower curtain

3

such that the bottom surface of each ring (on one or both sides of the shower curtain)
is essentially co-planar with the material of the shower curtain, also providing an
essentially "neat" and "orderly" appearance;

(3) wherein each ring includes a slit or gap in the ring;

(4) and wherein the shower curtain's rings or pairs of rings, and the associated slits
or gaps, are each fixed in place on the shower curtain and provide an organized and
symmetrical repeating visual pattern along the top width of the shower curtain.

EZY Hang Dkt. 501 at 9.  As shown in the images on page 1, *supra*, elements 1, 2, and 4 of
Plaintiffs' purported trade dress are generic to grommet curtains.  The final element, a "slit or gap
in the ring," was technology once patented by Plaintiffs that has now passed into the public domain.

In the EZY Hang Case, this Court held that Plaintiffs had common law rights sufficient to
support a claim of trade dress infringement against Kartri's EZY Hang products.  The Court's
conclusion was tied to and bounded by the circumstances of that case, including time period (the
Court found plaintiffs to have controlled the trade dress "**between 1997, when the trade dress
was introduced, and 2013, when defendants' alleged infringement began,**" EZY Hang Dkt.
501 at 29 (emphasis added)), and the multiple other forms of intellectual property that were
asserted.  For example, regarding similarity of Plaintiffs' and Defendant's trade dresses, the Court
found Defendant's EZY Hang mark to be "strongly similar" to Plaintiffs' word marks, and held
that "**[t]hese findings compel a similar outcome as to the Trade Dress.**"  EZY Hang Dkt. 501
at 83-84 (emphasis added).  Regarding likelihood of confusion the Court found that "**[t]he finding
of a likelihood of confusion as to the two Marks compels a similar finding of likelihood of
confusion as to the Trade Dress**."  EZY Hang Dkt. 501 at 98 (emphasis added); and regarding
willfulness "**the Court finds that the factor of bad faith cannot be logically cabined to the EZ-**

**ON Mark.**  Defendants' strategy of deliberate infringement, the Court finds, was holistic."  EZY Hang Dkt. 501 at 92 (emphasis added).

During the course of the EZY Hang Case, Kartri ceased manufacture of the accused EZY Hang products, and ceased use of any trademarks that could potentially cause confusion with Plaintiffs' marks.  EZY Hang Dkt. 501 at 165.  Instead, they created an entirely new line, called Hang2it, based on Kartri proprietary designs and technology in the public domain.

**Kartri's Reimagined Hang2it Curtains**

As prominently advertised by Kartri (*see* https://www.kartri.com/products.html, excerpted in part as Complaint Ex. 1; full copy attached as Exhibit 2 hereto), the "Teardrop Buckle" Hang2it product depicted below is a grommet curtain featuring Kartri's own patented teardrop-shaped buckle and utilizes the configuration disclosed in the long-expired and now publicly-available '232 Patent.



| **Kartri Teardrop Buckle Hang2it** | **'232 Patent** |
|---|---|
| https://www.kartri.com/store/p21/Empire_ Waffle - White - HANG2IT_Curtain.html | '232 Patent Fig. 3 and Fig. 1 (excerpt) |

As illustrated above, the long-expired '232 Patent claims, describes and depicts the precise configuration of the Teardrop Buckle Hang2it curtain, which allows the curtain to be hung without removing the rod from the wall.  *See* EZY Hang Dkt. 174-1 at col. 4, line 68 to col. 5, line 2 ("…said mounting means comprising two openings defined in said material and communicating

with each other."); col. 1, ll. 50-54 ("easily attaching a curtain or the like to a rod without the necessity of threading the rod [through openings in the curtain]").

Kartri has also sold Hang2it products featuring rings with top slits as opposed to slits between rings in pairs, which can be produced in custom widths for clients who seek curtains in nonstandard sizes. Kartri's patented "Z-Buckle" design (*see* U.S. Design Patent No. D823,097, issued July 17, 2018, accessible at https://patents.google.com/patent/USD823097S1) has a flat top, an oval interior and exterior design, and a distinctive, curving, z-shaped vertical slit through each ring. Curtain rings with vertical slits are also in the public domain – as depicted, for example, in Plaintiffs' expired '248, '609, and '088 Patents, and also in other, longer-expired patent disclosures such as U.S. Patent No. 2,831,538, described on page 2 above. With the expiration of these patents, the claimed configurations became fully available for use by anyone, including Kartri.

No discovery about the Hang2it line was taken during the EZY Hang Case. Instead, during the EZY Hang Case Plaintiffs acknowledged, and the Court ruled, that the Hang2it product "is not one claimed to have infringed plaintiffs' intellectual property, and thus is not at issue in the case." EZY Hang Dkt. 436 at 21:19-21; 22:1-4.

At the conclusion of the EZY Hang Case, however, Plaintiffs sought to accuse Kartri's Hang2it products of infringement and violation of this Court's injunction against future infringement. EZY Hang Dkt. 519. They sought to adjudicate their claims as part of the EZY Hang Case, as a contempt proceeding. *Id.* This Court denied Plaintiffs' motion, holding that any claim against the Hang2it must be brought as a new case, "litigated with the formalities and rigor attendant to a plenary lawsuit." EZY Hang Dkt. 529 at 2. Plaintiffs then filed this lawsuit.

**Plaintiffs' Defective Complaint**

Plaintiffs' Complaint purports to allege claims of trade dress infringement and unfair competition under the Lanham Act (Count I), and unfair competition under New York common law (Count II).  Complaint ¶¶ 75-83, 84-97.  But it lacks factual allegations sufficient to support those claims.  Instead, it seeks to piggyback on this Court's earlier rulings from the EZY Hang Case, which involved different accusations against a different product, and fail to satisfy Plaintiffs' pleading obligations on numerous dimensions.  Further, the Complaint seeks to illegitimately prohibit Kartri from practicing what is now in the public domain.  It asserts a trade dress that is invalid as a matter of law.  For all these reasons the Complaint must be dismissed.

## II.    ARGUMENT

In ruling that Plaintiffs could bring a lawsuit challenging Kartri's Hang2it line, this Court cautioned that any such case would be "litigated with the formalities and rigor attendant to a plenary lawsuit."  EZY Hang Dkt. 529 at 2.  This requires a well-pleaded complaint whose factual allegations, if taken as true, satisfy all the elements of the claims asserted.  The Complaint filed by Plaintiffs does not meet that standard.  Instead, it simply repeats that previous Kartri products were found to infringe Plaintiffs' intellectual property, perhaps in hopes that that will cause the Court to assume that the factual predicates exist for a trade dress infringement claim against the Hang2it, even without having been properly alleged.  The Complaint is inadequate under Federal Rule of Civil Procedure 12(b)(6) on multiple dimensions.  Moreover, the trade dress is invalid as a matter of law, and cannot be asserted against any Defendant, including Kartri.

### A.    Legal Standard

Dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate where a plaintiff has not set forth "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In connection

with that analysis, well-pleaded factual allegations, but not mere legal conclusions, are entitled to the assumption of truth. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do," nor will "'naked assertion[s]' devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). The Second Circuit has additionally recently emphasized that under *Twombly* and *Iqbal*, "a court should not accept as true allegations that amount to mere 'legal conclusions,' including those concerning a defendant's state of mind." *Whiteside v. Hover-Davis, Inc.,* 995 F.3d 315, 321 (2d Cir. 2021) (internal citations omitted).

A complaint that fails to state a claim must be dismissed. And when a complaint is dismissed, it is well established that leave to amend need not be granted when amendment would be futile. *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Jones v. New York State Div. of Military & Naval Affairs,* 166 F.3d 45, 50 (2d Cir.1999)).

**B.    Plaintiffs Fail to Allege a Proper Trade Dress Claim**

Plaintiffs' Complaint reflects a fundamental misapprehension about the scope and purpose of trade dress protection. Specifically, "[t]he Lanham Act does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 34 (2001). Trademark and unfair competition law are, rather, concerned with "protecting consumers from confusion as to source." *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 157 (1989) (emphasis omitted); *see also TrafFix*, 532 U.S. at 28-29. As Judge Learned Hand long ago wrote for the Second Circuit: a competitor "may copy the plaintiff's goods slavishly down to the minutest detail; but he may not represent himself as the plaintiff in their sale." *Crescent Tool Co. v. Kilborn & Bishop Co.*, 247 F. 299, 301 (2d Cir. 1917).

The thrust of Plaintiffs' objection to Kartri's Hang2it seems to be that it allegedly embodies designs Plaintiffs claim to have originated—but this does not amount to trade dress infringement. The heart of a trade dress infringement claim must be source confusion on the part of consumers, not a mechanical comparison of Kartri products to the verbal articulation of what Plaintiffs contend comprises their trade dress.   Failing to appreciate this, Plaintiffs have not included in their Complaint factual allegations establishing that consumers will likely be confused as to the source of Kartri's Hang2it products due to Plaintiffs presently possessing rights in some proprietary design.  This is a fatal defect.

To properly plead a claim of trade dress infringement, a Complaint must allege that: "(1) Plaintiffs' trade dress is 'distinctive as to the source of its goods, and therefore entitled to protection,' (2) Defendant's trade dress infringes on Plaintiffs' trade dress by creating 'a likelihood of confusion,' and (3) Plaintiffs' trade dress is 'not functional.'"  *Wonderful Co. LLC v. Nut Cravings Inc.*, No. 1:21-cv-03960 (MKV), 2022 WL 4585344, at *2 (S.D.N.Y. Sept. 29, 2022) (quoting *Kaufman & Fisher Wish Co., Ltd. v. F.A.O. Schwarz*, 184 F. Supp. 2d 311, 316 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 335 (2d Cir. 2002)).  Having failed to allege each of these elements, let alone all of them, the Complaint in this case must be dismissed.

1. <u>The Complaint Does Not Plead the Essential Element of Distinctiveness.</u>

Plaintiffs have not plausibly alleged that their purported trade dress is "distinctive as to the source of its goods, and therefore entitled to protection," (*Wonderful,* 2022 WL 4585344 at *2), which is an essential element of any common law trade dress infringement pleading.  In order to satisfy the distinctiveness requirement, a trade dress plaintiff must establish that "in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself" *and,* further, that it is not generic. *Yurman Design, Inc. v. PAJ, Inc.*, 262

F.3d 101, 115 (2d Cir. 2001) (quoting *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210-11 (2000)).

Critically, as this Court noted in deciding the EZY Hang Case, the determination of distinctiveness "must be made as of the date of the alleged infringement." EZY Hang Dkt. 501 at 62, *citing Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.,* 164 F.3d 736, 744-45 (2d Cir. 1998). The date of the inquiry is more than just a mere formality; it can and does have critical significance because it is well established that even marks that once had source-indicating significance may *become* generic over time. In a seminal trademark case about the name for Murphy beds, the Second Circuit explained that this is so even if the mark was "created for its purpose by the manufacturer and only thereafter . . . adopted by the public as a matter of common use," and that once the public has so adopted the former mark, "policing is of no consequence" and so even attempts to complain to third-party users will not succeed in "recall[ing]" the mark from genericness. *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.,* 874 F.2d 95, 100-01 (2d Cir. 1989) (providing other well-known examples of marks that became generic, including thermos and cellophane).

This principle applies to product design trade dress as well as word marks. *See Nora Beverages,* 164 F.3d at 744 ("Competitors are free to use an owner's trade dress if it has become generic over time even if it was originally distinctive."); *see also Malaco Leaf, AB v. Promotion In Motion, Inc.,* 287 F. Supp. 2d 355, 363-64 (S.D.N.Y. 2003) (internal quotation omitted) (finding fish shape design of Swedish fish candy to have lost distinctiveness through uncontrolled third party use, since "[a] product design trade dress may become generic ... as a result of the trademark owner's failure to police it, so that widespread usage by competitors leads to generic usage among the relevant public, who see many sellers using the same product design."); *see also Oneida Grp.*

*Inc. v. Steelite Int'l U.S.A. Inc.,* No. 17-cv-0957 (ADS)(AKT), 2017 WL 1954805, at *16 (E.D.N.Y. May 10, 2017) (reaching similar conclusion with regard to dish design).

Therefore, regardless of what the Court may have concluded regarding the distinctiveness of Plaintiffs' purported trade dress during the period when Kartri was selling its former EZY Hang products, the Complaint was required—and failed—to plausibly allege facts establishing that the purported trade dress has been distinctive *during the time the challenged Hang2it has been sold.* Complaint ¶ 19.  A claim for trade dress infringement therefore has not been stated.[3]

2.   <u>The Complaint Does Not Plead the Essential Element of Nonfunctionality.</u>

Plaintiffs also failed to allege facts that, if taken as true, would establish that its asserted trade dress is nonfunctional.  This is a necessary part of a trade dress claim, and Plaintiffs' burden: there is a "statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 30 (2001).  Furthermore, "[a] utility patent is strong evidence that the features claimed therein are functional," and a court should give "great weight to the statutory presumption" of functionality where the features were the subject of a utility patent.  *Id.* at 29-30.

This Circuit recognizes two different types of functionality: utilitarian and aesthetic.  As the Second Circuit recently explained: "a product feature is considered to be 'functional' in a utilitarian sense if it is (1) 'essential to the use or purpose of the article,' or if it (2) 'affects the cost

---

3   As set out in section II.E. *infra*, Plaintiffs likely did not attempt to allege that the general design of a hook-free shower curtain presently has source-indicating significance because they *could* not, without running afoul of Rule 11 of the Federal Rules of Civil Procedure and established case law.  Plaintiffs' purported trade dress consists of a standard grommet curtain with slit rings.  Moreover, whatever the situation may have been in the past, at the present time there are dozens of third parties selling grommet shower curtains with slit rings, so that the design now plainly comprises an "industry custom" and is generic.  *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1000 (2d Cir. 1997) ("A trade dress that consists of the shape of a product that conforms to a well-established industry custom is generic and hence unprotected.").  Exhibit 3 hereto provides a chart of some such items available on the internet, and Exhibit 4 comprises the first page of results when retailer Amazon.com is queried for "hookless shower curtains." Exhibit 4 lists approximately 29 brands besides Plaintiffs.'

or quality of the article.' Product features are essential when they are 'dictated by the functions to be performed by the article.'" *Sulzer Mixpac AG v. A&N Trading Co.,* 988 F.3d 174, 182 (2d Cir. 2021) (internal citations omitted), *cert. denied*, 142 S. Ct. 1359 (2022); *see also Yurman Design Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001); *TrafFix,* 532 U.S. at 32.

In the case of aesthetic functionality, where "the aesthetic design of a product is *itself* the mark for which protection is sought," a court considers whether "giving the markholder the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage." *Sulzer,* 988 F.3d at 182 (internal citations omitted). But *this is not the case* when a product has utilitarian functionality. In *TrafFix,* the Supreme Court clarified that when a feature is "is essential to the use or purpose of the device or when it affects the cost or quality of the device," it is ineligible for trade dress protection *regardless* of whether or not protection would put competitors at a "significant non-reputation-related disadvantage." 532 U.S. at 32-33. So, where the trade dress's features are "essential to the use or purpose of the article," or where they "affect[] the … quality of the device," the question of potential alternative designs is immaterial and competitors "need not explore" them. *Id*. at 33-34; *see also Sulzer,* 988 F.3d at 183 (2021 case confirming that alternative designs do not negate utilitarian functionality); *Sure Fit Home Prods., LLC v. Maytex Mills, Inc.*, No. 21 Civ. 2169 (LGS), 2021 WL 2134863, at *6 (S.D.N.Y. May 26, 2021), *aff'd*, No. 2021-2048, 2022 WL 1073209 (Fed. Cir. Apr. 11, 2022).

Plaintiffs have not alleged facts that would establish that the features of their purported trade dress are nonfunctional. Rather, they reference a legal conclusion from the prior EZY Hang Case, which appears to rest on the premise that nonfunctionality of the trade dress in question *could* be established by the presence of alternative designs. *See* Complaint ¶ 19; EZY Hang Dkt. 312 at 7 (internal citation omitted) ("An alternative design—*e.g.*, one involving hooks—could

certainly perform the same functions.  Plaintiffs have since demonstrated the availability of alternative designs to theirs, thus showing that protection of their hookless trade dress would not bar competitors from using hooked curtains, or all possible alternative hook-free designs.").

The finding that alternative designs exist is insufficient under the law to allege nonfunctionality because Plaintiffs' trade dress has utilitarian functionality; the ring-and-slit configuration is "essential to the use or purpose" of hanging a hookless curtain, and also plainly "affects the … quality of the device." *TrafFix*, 532 U.S. at 33.  The '232 Patent itself explains the claimed configuration's benefits in "easily attaching a curtain or the like to a rod without the necessity of threading the rod or the use of support clips while maintaining an attractive appearance to the mounted curtain," (col. 1 ll. 49-54), and explains that it is specifically the slit between rings that "enables the engagement of the accessory onto the rod," (col. 4 ll. 21-24).  *See also* EZY Hang Dkt. 473-1 at ¶ 172 (emphasis added) (inventor's declaration recounting media coverage stating: "No more contorting to attach ugly hooks, no more struggling with button-on loops. … This heavy duty vinyl curtain **simply pops onto the shower rod thanks to slits in the reinforced rings** and in the vinyl fabric.").

Consistent with the above analysis, Plaintiffs' trade dress has recently been characterized as functional by Judge Lorna Schofield in this district.  In *Sure Fit Home Prods., LLC v. Maytex Mills, Inc.*, (page 12, *supra*), Judge Schofield conducted a detailed analysis of these Plaintiffs' asserted trade dress, and not only held that Plaintiffs had failed to affirmatively demonstrate nonfunctionality, but also, explained how the features claimed in the trade dress are "amply influenced by engineering necessity" as described in Plaintiffs' '232 and '248 utility patents.  2021 WL 2134863 at *5 & n.3.

13

Specifically, supported by drawings and details from the patents, Judge Schofield explained that "the '232 and '248 Patent repeatedly identify the key point of novelty in their claimed inventions as the inclusion of a row of rings, each containing a slit that allows a curtain to be installed and supported on a rod without detaching that rod, and without the need for external hooks or clips that would present a disorderly or un-aesthetic appearance"—the very features claimed by the purported trade dress.  2021 WL 2134863 at *5.  Judge Schofield considered the argument Plaintiffs made in the EZY Hang Case regarding alternative designs and rejected it because "Plaintiffs' use of regularly spaced rings and associated slits at the top of a sheet of material serve the functional purpose of enabling the sheet to be hung on a fixed rod without using unsightly clips or hooks.  Whether another design serves the same purpose does not render Plaintiffs' engineering-driven ring-and-slit design non-functional."  2021 WL 2134863 at *6.  Judge Schofield's decision was affirmed by the Federal Circuit.[4]

The *Maytex Mills* court's evaluation of the functionality of Plaintiffs' trade dress is meticulous and thorough, and more recent than the analysis in the EZY Hang Case—it cites to and comports with precedent like *Sulzer* (2d Cir. 2021) which was not available to this Court during the EZY Hang Case.  Plaintiffs should not be permitted to ignore—and demand that this Court ignore—the fact that their purported trade dress has been found functional in another, more recent case.  *See Sulzer Mixpac AG v. DXM Co., Ltd.*, No. 19 Civ. 9404 (LAP), 2022 WL 4280343, at *3-4 (S.D.N.Y. Sept. 15, 2022) (barring plaintiff from arguing infringement of purported trade dress that was found functional in another case.).

---

4.  When Kartri previously pointed out the affirmance of Judge Schofield's opinion, Plaintiffs argued that the appeal they took was on other grounds and that they had not attempted to challenge the determination of functionality. EZY Hang Dkt. 526 at 3.  If that is so, they have foregone their opportunity to challenge that determination.  *See SmithKline Beecham Corp. v. Apotex, Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) (*citing Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1320-21 n.3 (Fed. Cir. 2005)); *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 800 (Fed. Cir. 1990).

Evaluated on its own merits, the Complaint wholly fails to provide factual allegations that would establish nonfunctionality if true.  The bare conclusion alleged in Paragraph 19 does not suffice.

   3. <u>The Complaint Does Not Plead the Essential Element of Likelihood of Confusion</u>

Plaintiffs have not plausibly alleged likelihood of confusion.  "The likelihood-of-confusion inquiry turns on 'whether numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question because of the entrance into the marketplace'" of the mark or dress of defendant. *Playtex Prods., Inc. v. Georgia–Pacific Corp.,* 390 F.3d 158, 161 (2d Cir. 2004) (quoting *Cadbury Beverages v. Cott Corp.* 73 F.3d 474, 477-78 (2d Cir. 1996), *superseded on other grounds by statute as recognized in Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,* 588 F.3d 97, 108 (2d Cir. 2009); *see Conte v. Newsday, Inc.,* No. 06–CV–4859 (JFB) (ETB), 2013 WL 978711, at *20 (E.D.N.Y. Mar. 13, 2013) (same).  There must be a "probability of confusion, not a mere possibility." *Id.* (citation omitted).

Here, instead of alleging facts that would, if true, render it probable that "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question," Plaintiffs have merely repeated the formulaic language from the Lanham Act alleging the conclusion that likelihood of confusion exists. *See* Complaint ¶¶ 39, 63, 78, 88-90, 92.  This tactic has been explicitly rejected by courts.  For example, in *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 345 (E.D.N.Y. 2014), the Court rejected as conclusory a pleading relying on allegations that were much the same as Plaintiffs' here (or, if anything, were actually *more* substantial).

| *Carson* Allegation | Plaintiffs' Allegation |
|---|---|
| "83.  Prym's copying of the ornamental design and overall appearance of Carson's SureGrip™ magnifier was intended to cause, and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of the products with Carson, or as to the origin, sponsorship, or approval of the products by Carson, and constitute a false or misleading representation as to the source or sponsorship of the products or a false designation of origin, all in violation of Section 42(a) of the Lanham Act, 15 U.S.C. § 1125(a)." | 39.  Kartri uses Plaintiffs' trade dress to confuse, cause mistake, and deceive customers and users into believing that Kartri's goods originate from, are sponsored by, or are approved by, Plaintiffs, and/or that Kartri is affiliated with, connected with, or associated with, Plaintiffs, and Kartri's activities poses a likelihood of such confusion, mistake, and/or deception. |

11 F. Supp. 3d at 345-6.  Likewise, Paragraph 85 of the Carson complaint and Paragraph 37 of Plaintiffs' comprise "essentially a formulaic recitation of the *Polaroid* factors," and such "naked assertion[s] devoid of factual enhancement . . . do not allow the Court to draw the reasonable inference that there is a likelihood of confusion."  *Id.* at 346 (internal quotation and citation omitted).

   As yet another court explained in dismissing a claim that "merely assert[ed] legal conclusions that track the text of 15 U.S.C. § 1125 and the *Polaroid* factors," "[w]hile the inquiry is ultimately a fact-sensitive question. … a plaintiff is still required to allege **facts regarding likelihood of confusion** that would state a claim to relief that is plausible on its face."  *Pub. Free Will Corp. v. Verizon Commc'ns Inc.*, No. 15-CV-6354(RRM) (JO), 2017 WL 1047330, at *4 (E.D.N.Y. Mar. 17, 2017) (emphasis added).

   Plaintiffs here have not done so.  They attempt to fill the gap with a reference to "the relevant facts adjudicated in [the EZY Hang Case]," and specifically, certain *Polaroid* factors that the Court weighed in their favor in that case.  Complaint ¶ 37.  This attempt must fail, because rather than a "mechanical" application of any particular *Polaroid* factors, likelihood of confusion turns on "the ultimate question of whether consumers are likely to be confused" regarding "the

source of the product in question." *Playtex Prods.*, 390 F.3d at 161-62.  The EZY Hang Case cannot assist the Court on that topic, since it did not involve the Hang2it at all.  More, the Court's conclusions regarding likelihood of confusion in the EZY Hang Case were not just influenced, but "compel[led]," by the Court's consideration of other word marks that were at issue in that case.  *See* EZY Hang Dkt. 501 at 98 ("The finding of a likelihood of confusion as to the two Marks compels a similar finding of likelihood of confusion as to the Trade Dress.").

The closest thing to a factual allegation to be found anywhere in the Complaint may be the images that were attached as Complaint Exhibit 1 and Exhibit 2.  But those fail to establish likelihood of confusion on the part of any consumers, and indeed, should be viewed as militating *against* any such showing.  Exhibit 1 appears to be a deceptively cropped image of the top portion of Kartri's "Products" website, omitting not only the clear labelling of the depicted product as the "Stocked Hang2it," but also, omitting the text directly beneath the image and Kartri company name, which reads: "Browse *our full array of quality products* below.  Trusted by hospitality, healthcare and other facilities since 1975, you can count on top notch quality and service at fair prices.  Contact us with any questions."  (emphasis added).  The full webpage relied on by Plaintiffs, in the form consumers on the internet would actually see it, is accessible at https://www.kartri.com/products.html, with a copy attached hereto for the Court's convenience as Exhibit 2.  As the Court can see it provides no basis for concluding that consumers would likely be confused, and Plaintiffs have alleged no factual matter whatsoever to that effect.  *See Wonderful Co. LLC v. Nut Cravings Inc.,* No. 1:21-cv-03960 (MKV), 2022 WL 4585344, at *4 (S.D.N.Y. Sept. 29, 2022) (rejecting conclusory allegations that Defendants were "causing customer confusion" with products "similar to Plaintiff's pistachio products," stating that the Court was

unconvinced by Plaintiffs' proffered images "that consumers are likely to be confused by similarities between the two" packages).

Regarding Plaintiffs' Exhibit 2: taking as true that Exhibit 2—a blurry image of unspecified provenance appearing to depict one corner of an unidentified shower curtain—does in fact depict Kartri's Z-Buckle curtain, it is unaccompanied by any factual allegation alleging whether and how such product was ever presented to consumers, and thus falls even shorter of alleging plausible likelihood of confusion. *See Eliya, Inc. v. Steven Madden, Ltd.*, 749 F. App'x 43, 47-48 (2d Cir. 2018) (finding that complaint "fails to plausibly allege a likelihood of confusion" where allegations were conclusory, offered "no written description of the [accused products] and fails to explain their resemblance," and provided images insufficient to establish "that consumers are likely to be confused by similarities between the two.").

C.    Plaintiffs Fail to Allege a Proper Unfair Competition Claim

Plaintiffs' claim for unfair competition under the Lanham Act (Count I) and New York common law (Count II) is based on the same allegations as their trade dress claim. *See* Complaint ¶¶ 84-97, reciting additional legal conclusions but no additional factual allegations. It therefore fails as a matter of law for the reasons discussed above. *See, e.g., Elements/Jill Schwartz, Inc. v. Gloriosa Co.*, No. 01 Civ. 904(DLC), 2002 WL 1492197, at *7 (S.D.N.Y. July 15, 2002) ("There being no trade dress that qualifies for protection and thus no trade dress in which the plaintiff has a proprietary right, the plaintiff cannot make out a claim for unfair competition based on the bad faith infringement of that trade dress."); *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 601-03 (E.D.N.Y. 2017) (collecting cases).

The common law claim fails for a second reason as well: in addition to the elements of a Lanham Act claim, to state a claim for unfair competition under New York common law a plaintiff must plead the defendant's bad faith. *See, e.g., Omicron Cap., LLC v. Omicron Cap., LLC*, 433

F. Supp. 2d 382, 395 (S.D.N.Y. 2006).  Importantly, to adequately allege bad faith in this context requires facts beyond just accusations that the defendant has infringed Plaintiffs' intellectual property.  *See Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 329 (E.D.N.Y. 2014) ("[P]laintiffs' unfair competition … claims again fail due to the absence of allegations of additional tortious conduct that is separate from the patent law cause of action.  The tortious conduct proffered is based upon allegations (i) of patent infringement, (ii) that defendants copied an unpatented product; and (iii) of trade dress infringement.").  The allegations must be factual rather than conclusory.  *See, e.g., Bubble Genius LLC*, 239 F. Supp. 3d at 602 (internal citation omitted) (concluding complaint did "not contain any facts that would lead to the plausible inference ... that defendant acted in bad faith" where it alleged "in a conclusory manner that defendant acted willfully, wantonly, oppressively and maliciously, and with the intent to cause confusion, mistake and to deceive prospective customers"); *Eyal R.D. Corp. v. Jewelex New York Ltd.*, 784 F. Supp. 2d 441, 447 (S.D.N.Y. 2011) (dismissing unfair competition claim because Plaintiff "did not allege any facts to support the claim that [defendant's] actions were done in bad faith—again, apart from the copying itself—which is an element required to show unfair competition under New York common law").

The complaint here alleges no such facts; it "does not allege, for instance, the efforts of a salesman or a company, by words or deeds, to deceive consumers into believing that accused merchandise is something else."  *Id.*  Rather, the allegations in Plaintiffs' Complaint directed towards the "bad faith" element are solely the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," (*Iqbal*, 556 U.S. at 678), which are insufficient as a matter of law to state a cause of action.  Plaintiffs cannot attempt to rely on any facts or rulings from the EZY Hang Case to remedy their failure, as that case did not involve the products or

conduct challenged in this case.  *See* EZY Hang Dkt. No. 529 at 1 (confirming that "the Court ruled that Hang2it, having been introduced long after the outset of this case, was not a subject of discovery, and therefore was not properly within the scope of trial.").  Therefore, separate and apart from Plaintiffs' failure to make out a trade dress claim, Count II must be dismissed for this reason as well.  *See, e.g., Carson Optical*, 11 F. Supp. 3d at 330–31 (finding allegations that defendant's actions were "undertaken in bad faith to misappropriate" insufficient to plead bad faith).

       D.     <u>Plaintiffs Fail to Adequately Allege Standing</u>

Under the Lanham Act, any party "who believes that he or she is or is likely to be damaged" by an infringement of an unregistered trade dress may have standing to bring a claim.  *See, e.g., Schieffelin & Co. v. Jack Co. of Boca, Inc.*, No. 89 Civ. 2941 (PKL), 1992 WL 156560, at *15 n.10 (S.D.N.Y. June 28, 1992) (citing *DEP Corp. v. Interstate Cigar Co.,* 622 F.2d 621, 624 n.3 (2d Cir. 1980)).  A party with a "concrete interest in protecting the mark" has standing to bring a suit.  *Bus. Trends Analysts v. Freedonia Grp., Inc.,* 650 F. Supp. 1452, 1458 (S.D.N.Y. 1987).  In the case of an unregistered mark, this can include a party who is an "exclusive licensee" or who "own[s] an exclusive distributorship for a product sold under the trademark."  *Id.* at 1457-58.

However, Plaintiffs' Complaint does not provide sufficient factual allegations.  It asserts, without elaboration, that Keeco LLC is the "the exclusive licensee" of Plaintiff Hookless Systems of North America, Inc. for certain intellectual property and "the successor-in-interest" to rights previously licensed to others, including SF Home Décor, LLC.  Complaint ¶¶ 9-10.  But in the EZY Hang Case, which this Court has identified as "related" to this one and which Plaintiffs seek to incorporate wholesale, (Complaint ¶ 20), the entity SF Home Décor, LLC seems presently claimed to hold those same rights, (*see* EZY Hang Dkt. 148 ¶ 14, operative complaint alleging that "SF Home Décor LLC **currently holds**, and is the successor-in-interest to, all intellectual property

rights relating to this suit that were previously held by Focus," emphasis added), and is still attempting to enforce them (*see* EZY Hang Dkt. 505, 519).[5]

Moreover, the Complaint in this case identifies Plaintiff Zahner Design Group, Ltd. ("ZDG") as the "owner" of certain rights, (Complaint ¶ 6), Plaintiff Hookless Systems of North America, Inc. ("HSNA") as "**ZDG's licensee** of the intellectual property that is the subject of this Complaint," (*Id.* ¶ 7, emphasis added), and Plaintiff Keeco LLC as "**the exclusive licensee of HSNA** for the intellectual property in, inter alia, the field of shower curtains for sales to hospitality channels" (*Id.* ¶ 9, emphasis added).  In other words, since HSNA is identified as a "licensee" but not an "exclusive licensee," an exclusive licensee relationship has not been alleged and there may be other licensees out there.  Indeed, in the EZY Hang Case there was extensive litigation over the question of the rights of another entity, Carnation Home Fashions, Inc., which was also identified as a "licensee," (*see* EZY Hang Dkt. 501 at 63, n.36; 18-23), and which at least at one time sold shower curtains purportedly embodying Plaintiffs' trade dress.  *Id.* at 8-9.

Given the centrality of the question of source confusion to a trade dress claim, Plaintiffs' failure to allege an exclusive-licensee relationship that could enable a conclusion that the products in question are understood by consumers to have a single, distinct source is significant.  In light of that failure, and the contradiction in the two supposedly "related" cases before this Court asserting this trade dress, the Complaint's unsupported allegations regarding the various Plaintiffs' respective relationships to the purported trade dress are insufficient to allege standing, providing an independent basis for dismissal.

---

5. Because Plaintiffs' assertions in the EZY Hang Case indicate that SF Home Décor LLC was an entity which had rights to Plaintiffs' purported trade dress during some of the time period at issue in this case, it may well be that SF Home Décor LLC is an indispensable party to the resolution of this case.  If this case does proceed to discovery, Kartri intends to seek immediate discovery on this issue, and may ultimately seek dismissal under Federal Rule of Civil Procedure 12(b)(7) for failure to join an indispensable party.

E.      Amendment Would Be Futile

The dismissal of the Complaint should be with prejudice and without leave to amend, because amendment would be futile. *No* legitimate claim of trade dress infringement (and, consequently, no claim of unfair competition based on such claim) can ever be pleaded with respect to the Hang2it products depicted in the Complaint.  This is because the Hang2it products depicted in the Complaint comprise ordinary grommet curtains with a slit element that was once patented but is now "in the public domain and may be made and sold by whoever chooses to do so."  *See Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 231 (1964); *see also Gilead Scis., Inc. v. Natco Pharma Ltd.*, 753 F.3d 1208, 1212 (Fed. Cir. 2014) ("[I]n exchange for a patent, an inventor must fully disclose his invention and promise to permit free use of it at the end of his patent term.").

The rationale for why the public cannot be prohibited from practicing the disclosures of an expired patent was explained clearly by the Supreme Court in *Scott Paper Co. v. Marcalus Mfg. Co.*, 326 U.S. 249 (1945).  "The public has invested in such free use by the grant of a monopoly to the patentee for a limited time. Hence any attempted reservation or continuation in the patentee or those claiming under him of the patent monopoly, after the patent expires, ***whatever the legal device employed***, runs counter to the policy and purpose of the patent laws." 326 U.S. at 256 (emphasis added).  More specifically, and highly relevant here, the Court noted that the patentee "***may not exclude the public . . . by resorting to the trademark law*** and registering as a trademark any particular descriptive matter appearing in the specifications, drawings or claims of the expired patent."  *Id.* (emphasis added) (citing *Kellogg Co. v. Nat'l Biscuit Co.,* 305 U.S. 111, 117-120 (1938); *Singer Mfg. Co. v. June Mfg. Co.,* 163 U.S. 169, 185 (1896)).

In the *Singer* case, after the patent on the Singer sewing machine expired, a competitor began making the machine and was challenged based on the machine itself and also on "the use made by him of the word 'Singer' in connection with the marks and devices on his machines."

22

*Singer,* 163 U.S. at 184.   The Supreme Court reiterated that it was "self-evident that on the expiration of a patent the monopoly created by it ceases to exist," and that the form of the machine had "become[] public property."   *Id.* at 185.   But the Court also rejected the challenge to competitor's use of the Singer *name* for the product, because that was the name by which the product had become known and "was essentially necessary to vest the public with the full enjoyment of that which had become theirs by the disappearance of the monopoly."   *Id.; see also Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938) ("Since during the life of the patents 'Shredded Wheat' was the general designation of the patented product, there passed to the public upon the expiration of the patent, not only the right to make the article as it was made during the patent period, but also the right to apply thereto the name by which it had become known.").

This is as true of product designs as it is of product names.   In the *Sears* case, for example, "What Sears did was to copy Stiffel's design and to sell lamps almost identical to those sold by Stiffel.   This it had every right to do under the federal patent laws.   That Stiffel originated the pole lamp and made it popular is immaterial."   *Sears,* 376 U.S. at 231.   Here, like the design of the Stiffel lamp, the term "Shredded Wheat" to describe cereal, and the Singer sewing machine, the general appearance of shower curtains reflecting the configurations disclosed in Plaintiffs' expired patents has "become[] public property" along with the technology that creates that appearance. Plaintiffs cannot through a trade dress claim deprive the public of "the full enjoyment of that which ha[s] become theirs."   *Singer,* 163 U.S. at 185.   As such, Plaintiffs should not be given leave to amend their defective Complaint because no claim of trade dress infringement or unfair competition based upon the asserted trade dress and Hang2it can be properly stated.

  F. <u>Plaintiffs' Trade Dress Should Be Held Invalid as a Matter of Law</u>

Plaintiffs' Complaint *did not* state a claim for trade dress infringement by the Hang2it, and *could not ever* assert such a claim based on the Hang2it's use of features in the public domain.

But over and above these fatal defects, the Court should also hold that Plaintiffs' trade dress is invalid as a matter of law.  The Court can rule a trademark invalid as a matter of law on a motion under Federal Rule of Civil Procedure 12(b)(6), and dismiss the Complaint on that basis.  *See CES Publ'g Corp. v. St. Regis Publ'ns, Inc.,* 531 F.2d 11, 15 (2d Cir. 1975).  That should be the outcome here.

As set forth above, Plaintiffs' trade dress is functional—it is literally the result of hanging traditional grommet curtains via formerly-patented slit rings—and it has been deemed functional by a Judge of this Court.  *See* pages 13-14, *supra* (citing S*ure Fit Home Prods., LLC v. Maytex Mills, Inc.,* No. 21 Civ. 2169 (LGS), 2021 WL 2134863 (S.D.N.Y. May 26, 2021),).  Thus, the trade dress is invalid as a matter of law.

Furthermore, "[g]eneric [trade] dresses—those that refe[r] to the genus of which the particular product is a species—are never protectable*." Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 32 (2d Cir. 1995) (internal quotations omitted).  The Second Circuit has explained that "the fact that a trade dress is composed exclusively of commonly used or functional elements" can suggest genericism.  *Id.*  It further explained that trade dress cannot "protect an idea, a concept, or **a generalized type of appearance**" or operate to "exclude competition from functionally similar products;" on the contrary, the purpose of trade dress is to allow the owner to "inform[] the public of the source of its products."  *Id.* at 33 (emphasis added).

Here, the general appearance of a long-known grommet curtain that incorporates the functional slits of Plaintiffs' expired patents is precisely "a generalized type of appearance" comprising "exclusively commonly used or functional elements," and reserving it for Plaintiffs alone would "exclude competition from functionally similar products."

There are presently many such products on the market.  Exhibits 3 and 4 hereto provide examples of shower curtains offered by dozens of different sellers, all appearing to reflect the look that Plaintiffs claim comprises a proprietary trade dress.  It is long established that "[a] trade dress that consists of the shape of a product that conforms to a well-established industry custom is generic and hence unprotected."  *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1000 (2d Cir. 1997); *see also Malaco Leaf,* 287 F. Supp. 2d at 363–64 (finding fish shape of Swedish fish candy to have become generic through extensive third party use); *Oneida Grp.*, 2017 WL 1954805, at *16 (similar, regarding dish design).

As the asserted trade dress is functional, and as there is presently no source-indicating significance to the appearance of a grommet shower curtain with slitted rings, Plaintiffs' purported trade dress is invalid as a matter of law.  The Court should so hold, providing yet another basis on which the Complaint must be dismissed.

## III.   CONCLUSION

Kartri respectfully submits that in light of all the foregoing, Plaintiffs' Complaint should be dismissed, with prejudice, in its entirety.

Dated: 03/30/2023                      Respectfully Submitted,


                                       By:   */s/ Patrice P. Jean*
                                             Patrice P. Jean
                                             Emma L. Baratta
                                             Lynn M. Russo

                                       HUGHES HUBBARD & REED LLP
                                       One Battery Park Plaza
                                       New York, New York 10004-1482
                                       Telephone:  +1 (212) 837-6000
                                       Fax:  +1 (212) 422-4726
                                       patrice.jean@hugheshubbard.com
                                       emma.baratta@hugheshubbard.com
                                       lynn.russo@hugheshubbard.com

                                       *Attorneys for Defendant*

104593386