UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KEECO LLC, ZAHNER DESIGN GROUP, LTD., HOOKLESS SYSTEMS OF NORTH AMERICA, INC., KEECO, INC., HOLLANDER PARENT CORPORATION, SURE FIT HOME DÉCOR HOLDINGS LLC, SF HOME DÉCOR, LLC, SURE FIT HOME PRODUCTS, LLC, SURE FIT HOME DÉCOR HOLDINGS CORP, SURE FIT HOME DÉCOR LLC, and FOCUS PRODUCTS GROUP INTERNATIONAL, LLC,<br><br>        Plaintiffs,<br><br> v.<br><br>KARTRI SALES COMPANY, INC.,<br><br>        Defendant. | Case No. 23 Civ. 02003 (PAE)(SDA) |

**DEFENDANT KARTRI'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................(ii)

I.    PLAINTIFFS STILL HAVE NOT PROPERLY ALLEGED CLAIMS FOR
TRADE DRESS INFRINGEMENT OR UNFAIR COMPETITION. ...................................1

    A.    Plaintiffs have provided the Court an incorrect legal standard ................................1

    B.    Plaintiffs have failed to properly plead Counts II and III ........................................1

II.    PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON
COUNT I. ...........................................................................................................................6

III.    COLLATERAL ESTOPPEL DOES NOT BAR LITIGATION OF THIS CASE. .................7

IV.    THE PUBLIC HAS THE RIGHT TO PRACTICE WHAT IS IN THE PUBLIC
DOMAIN. ...........................................................................................................................8

V.    THE PURPORTED TRADE DRESS IS INVALID AS A MATTER OF LAW. ...................9

VI.    THERE ARE GAPS IN PLAINTIFFS' PLEADINGS CONCERNING
STANDING. .....................................................................................................................10

CONCLUSION ................................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re: Am. Express Anti-Steering Rules Antitrust Litig.*,
   No. 08-CV-2315 (NGG)(RER), 2016 WL 748089 (E.D.N.Y. Jan. 7, 2016) ............................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................................1

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
   489 U.S. 141 (1989) ...................................................................................................................9

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
   11 F. Supp. 3d 317 (E.D.N.Y. 2014) .........................................................................................5

*CIT Bank, N.A. v. Jach*,
   No. 15-CV-5814(KAM)(RLM), 2019 WL 1383850 (E.D.N.Y. Mar. 27, 2019) .....................8

*Citadel Mgmt., Inc. v. Telesis Tr., Inc.*,
   123 F. Supp. 2d 133 (S.D.N.Y. 2000) .......................................................................................6

*Defiance Button Mach. Co. v. C & C Metal Prods.*,
   759 F. 2d 1053 (2d Cir. 1985) ...................................................................................................3

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*,
   160 B.R. 882 (Bankr. S.D.N.Y. 1993) .......................................................................................4

*Flaherty v. Lang*,
   199 F.3d 607 (2d Cir. 1999) .......................................................................................................7

*GEOMC Co. v. Calmare Therapeutics Inc.*,
   918 F.3d 92 (2d Cir. 2019) .........................................................................................................1

*Int'l Media Films, Inc. v. Lucas Ent., Inc.*,
   703 F. Supp. 2d 456 (S.D.N.Y. 2010) .....................................................................................10

*Johnson v. City of New York*,
   No. 16-CV-6426 (KAM) (VMS), 2018 WL 1597393 (E.D.N.Y. Mar. 31,
   2018) ..........................................................................................................................................6

*Krueger Int'l, Inc. v. Nightingale Inc.*,
   915 F. Supp. 595 (S.D.N.Y. 1996) ........................................................................................8, 9

*Montana v. United States*,
   440 U.S. 147 (1979) ...................................................................................................................7

*Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*,
 874 F.2d 95 (2d Cir. 1989)..................................................................................................2

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
 164 F.3d 736 (2d Cir. 1998)..................................................................................................1

*Playtex Prods., Inc. v. Georgia–Pacific Corp.*,
 390 F.3d 158 (2d Cir. 2004)..................................................................................................5

*Plus Prod. v. Nat. Organics, Inc.*,
 No. CV 81-1798, 1984 WL 33 (E.D.N.Y. Feb. 3, 1984)........................................................7

*PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*,
 520 F.3d 109 (2d Cir. 2008)..................................................................................................6

*Sally Beauty Co., Inc. v. Beautyco, Inc.*,
 304 F. 3d 964 (10th Cir. 2002) .............................................................................................3

*Scott Paper Co. v. Marcalus Mfg. Co.*,
 326 U.S. 249 (1945)..............................................................................................................9

*Singer Mfg. Co. v. June Mfg. Co.*,
 163 U.S. 169 (1896)..............................................................................................................9

*Sulzer Mixpac AG v. A&N Trading Co.*,
 988 F.3d 174 (2d Cir. 2021)..................................................................................................5

*Sure Fit Home Prods., LLC v. Maytex Mills, Inc.*,
 No. 21 CIV. 2169 (LGS), 2021 WL 2134863 (S.D.N.Y. May 26, 2021), *aff'd*,
 No. 2021-2048, 2022 WL 1073209 (Fed. Cir. Apr. 11, 2022) ..............................................4

*The Christopher D. Smithers Found., Inc. v. St. Lukes-Roosevelt Hosp. Ctr.*,
 No. 00 CIV. 5502 (WHP), 2001 WL 761076 (S.D.N.Y. July 6, 2001)................................10

*Trachtenberg v. Dep't of Educ. of City of New York*,
 937 F. Supp. 2d 460 (S.D.N.Y. 2013) (Engelmayer, J.) .......................................................1

*Wal-Mart Stores, Inc. v. Samara Brothers, Inc.*,
 529 US 205 (2000)................................................................................................................2

**Statutes and Rules**

15 U.S.C. § 1125(a) .....................................................................................................................3

Fed. R. Civ. P. 12(b)(1)................................................................................................................1

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 4, 5

Defendant Kartri Sales Company, Inc. ("Kartri") respectfully submits this Reply in support of its Motion to Dismiss this action pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion," Dkts. 12-14) and the related Letter of May 4, 2023 (the "Letter," Dkt. 17). Plaintiffs' Opposition fails to identify any legitimate reason why the Motion should not be granted.

## I. PLAINTIFFS STILL HAVE NOT PROPERLY ALLEGED CLAIMS FOR TRADE DRESS INFRINGEMENT OR UNFAIR COMPETITION.

### A. Plaintiffs have provided the Court an incorrect legal standard.

When evaluating the sufficiency of complaints, the "no set of facts" standard which Plaintiffs put forward (*see* Opp. at 3-4, citing a case from 1991) is no longer good law following *Twombly* and *Iqbal*. *See, e.g., Ashcroft v. Iqbal,* 556 U.S. 662, 670 (2009) ("*Twombly* retired the *Conley* no-set-of-facts test"); *GEOMC Co. v. Calmare Therapeutics Inc.,* 918 F.3d 92, 96 (2d Cir. 2019) (stating that the standard provided in the Opposition "is best forgotten" and was replaced in *Twombly* and *Iqbal* with a "plausibility standard"); *Trachtenberg v. Dep't of Educ. of City of New York,* 937 F. Supp. 2d 460, 466 (S.D.N.Y. 2013) (Engelmayer, J.) ("*Twombly* and *Iqbal* have since 'retired' the *Conley* [no-set-of-facts] formulation.").

### B. Plaintiffs have failed to properly plead Counts II and III.

Under the correct legal standard, which requires "enough facts to state a claim to relief that is plausible on its face" (*see* Mot. at 7-8, briefing standard and citing authorities), the complaint is insufficient, as set forth in the Motion. The requirements for pleading a proper claim of trade dress infringement—distinctiveness, nonfunctionality, and likelihood of confusion—remain unmet.

Distinctiveness. The determination of distinctiveness "must be made as of the date of the alleged infringement." EZY Hang Dkt. 501 at 62, citing *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 744-45 (2d Cir. 1998). Plaintiffs argue that Kartri is somehow estopped from invoking this well-established principle because in the Ezy Hang case years earlier, more

1

than one product was accused but only one determination was made. Opp. at 14-15. However, "the alleged infringement" in the Ezy Hang case—related to the discontinued Ezy Hang products—is irrelevant to determining the date when Kartri began selling its Hang2it products.[1] Collateral estoppel is not appropriate for issues that must be evaluated as of a particular time in any event (*see* Section III *infra*). Moreover, as explained in the Motion and Letter, Plaintiffs' contention that they should be able to bring successive lawsuits against new Kartri products without ever again having to plead and prove validity of their unregistered trade dress (Opp. at 15) runs afoul of the well-established rule that a trade dress "may become generic" over time. *See* Mot. at 10-11, citing authorities. Plaintiffs fail to substantively address this issue, and merely characterize it as "absurd" (Opp. at 15).[2] It is not absurd; it is the law.

Significantly, as explained in the Motion (pp.10-11 and Dkts. 14-3, 14-4), one way in which a trade dress can lose its distinctiveness over time is if it comes into common use by others. At that point, "policing is of no consequence" and Plaintiffs cannot "recall" the mark from the public domain. *Murphy Door Bed Co. v. Interior Sleep Sys., Inc.,* 874 F.2d 95, 101 (2d Cir. 1989). Plaintiffs' assertion that it has sought to prohibit or grant "licenses" to some third parties (FAC ¶¶ 185-187) therefore does not establish that the purported trade dress is not generic. In fact,

---

[1] The parties agreed that the Hang2it products were not a part of the Ezy Hang case. Ezy Hang Dkt. 436 at 21-22.

[2] It should be noted that some of the burden Plaintiffs complain about shouldering (*e.g.* Opp. at 15, paragraph "Thirdly") arises from the fact that the purported trade dress they wish to assert is *unregistered*—it has never been presented to the USPTO for evaluation. Because Plaintiffs have not sought and received registration for their purported trade dress, they do not enjoy the presumptions to which registered marks are entitled. *See, e.g., Wal-Mart Stores, Inc. v. Samara Brothers, Inc.,* 529 US 205, 209, 216 (2000) ("Registration of a mark under § 2 of the [Lanham] Act, 15 U. S. C. § 1052 . . . entitles the owner to a presumption that its mark is valid." . . . . "We hold that, in an action for infringement of *unregistered* trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a *showing* of secondary meaning.") (emphasis added).

depending on what discovery reveals about the contents of those licenses, they may constitute yet another basis on which to find the purported trade dress invalid. *See Defiance Button Mach. Co. v. C & C Metal Prods.,* 759 F.2d 1053, 1059 (2d Cir. 1985) ("The mark also ceases to be enforceable against others when it loses its significance as an indication of the origin of goods sold by and associated with the mark owner, such as when the owner makes the mark the subject of an unrestricted license or sale to others.").

Plaintiffs allege that a survey was conducted in 2021 showing "unaided brand awareness of 25% of the Hookless® brand; and, as to aided brand awareness, that 58% of consumers associate Plaintiffs' products with the name Hookless®." FAC ¶ 145; Opp. at 17. But neither awareness of "the Hookless® brand," nor "association of Plaintiffs' products with the name Hookless®" is relevant to the question of whether consumers believe that *all* slitted grommet curtains come from the same source. *Cf. Sally Beauty Co., Inc. v. Beautyco, Inc.*, 304 F. 3d 964, 974 (10th Cir. 2002) (Conductor of a survey "not designed to test confusion over the trademarks separate from the trade dress" admitted it "does not support the conclusion" that the trademark was likely to cause confusion). The survey is irrelevant and cannot serve to allege distinctiveness of the Trade Dress.

<u>Functionality</u>. Once again (*see* n.2, *supra*), the fact that Plaintiffs' purported trade dress is unregistered means that Plaintiffs here bear a burden. Section 43(a) of the Lanham Act specifically provides that "[i]n a civil action for trade dress infringement under this chapter for **trade dress not registered** on the principal register, the person who asserts trade dress protection has **the burden of proving that the matter sought to be protected is not functional**." 15 U.S.C. §1125(a)(3) (emphasis added). Plaintiffs ask the Court not to consider the question of functionality because of collateral estoppel. This should be rejected (*see* Section III *infra*). Plaintiffs also ask the Court to

3

ignore the *Maytex Mills* functionality ruling[3] on grounds that it has recently been vacated. But "a logical and well-reasoned decision, despite vacatur, is always persuasive authority, regardless of its district or circuit of origin or its ability to bind." *In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey,* 160 B.R. 882, 898 (Bankr. S.D.N.Y. 1993). As explained in the Motion (*see* pp.13-14), the *Maytex Mills* opinion is persuasive for its thorough functionality analysis based on the asserted trade dress, Plaintiffs' expired utility patents, and the most recent Second Circuit functionality caselaw. It is no less persuasive now that Plaintiffs have procured a vacatur pursuant to settlement.[4] The facts related to the functionality of this common law trade dress have not changed.

Regarding the sufficiency of the functionality allegations in the FAC, the Opposition's listing of the legal conclusions pled in the FAC (Opp. at 10, citing FAC ¶¶ 110-114), devoid of any factual material to make them plausible, does not suffice under the correct 12(b)(6) standard. Plaintiffs' arguments about the impropriety of breaking down a trade dress into separate elements (Opp. 10-11 & nn.9-10) are irrelevant; Kartri's arguments are directed towards Plaintiffs' purported trade dress *in its entirety*. Additionally, Plaintiffs' arguments about alternative designs

---

[3] *Sure Fit Home Prods., LLC v. Maytex Mills, Inc.*, No. 21 CIV. 2169 (LGS), 2021 WL 2134863, at *5 & n.3 (S.D.N.Y. May 26, 2021), *aff'd*, No. 2021-2048, 2022 WL 1073209 (Fed. Cir. Apr. 11, 2022), vacated pursuant to settlement and stipulation by the parties ordered May 16, 2023. Regarding the Federal Circuit affirmance, Plaintiffs once again lob false accusations of "blatant falsehoods" and "bad faith [] misrepresent[ations]," claiming that the affirmance should not count since they waived their opportunity to appeal the functionality determination instead of litigating it. Opp. at 9. Kartri disagrees with Plaintiffs' position on that point and has provided supporting authority. *See* Mot. at 14 n.4.

[4] The chronology related in the Opposition (pp.8-9) should not be taken to imply that Judge Schofield changed her mind and vacated her opinion as a result of the Ezy Hang Case's functionality ruling. Rather, the *Maytex Mills* opinion explicitly addressed this Court's earlier ruling and yet came to the conclusion that the trade dress was functional. 2021 WL 2134863 at *5 n.3. Just days before they were required to file their Opposition, Plaintiffs settled with Maytex Mills and filed a stipulation with language providing for vacatur of the functionality opinion, which was then so-ordered. Dkt. 18-1.

fare no better, for the reasons explained in the Motion at pp.12-14 and by the Second Circuit in 2021. *Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 182-183 (2d Cir. 2021).

Finally, the Opposition's invocation of design patents issued to both Plaintiffs and Kartri is unavailing. As previously noted (Dkt. 17 at 2), each of those design patents was issued for a precise ornamental configuration—a particular buckle shape in the case of the Kartri patents, and a specific design of curtain with round rings having a slit in a particular location in the case of Plaintiffs.' The USPTO having found *those particular, specific* curtains and buckles to be protectable by design patents does not suggest that the entire broad category that Plaintiffs allege they are entitled to claim as a common law trade dress is nonfunctional.

Likelihood of Confusion. The Opposition treats the *Polaroid* factors "as a mechanical process by which the party with the greatest number of factors wins." *Playtex Prods., Inc. v. Georgia–Pacific Corp.,* 390 F.3d 158, 162 (2d Cir. 2004). But this is precisely what the Second Circuit has explained courts *should not* do. *Id.* Rather, the analysis "should focus on the ultimate question of whether consumers are likely to be confused." *Id.* The Opposition highlights old determinations from the Ezy Hang case and the fact that the FAC's expanded recitation of the *Polaroid* material is lengthy, but these fail to meet the standard of rendering it a "probability . . . not a mere possibility" that "numerous ordinary prudent purchasers are likely to be misled or confused as to the source of the product in question." *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 345 (E.D.N.Y. 2014). It is insufficient to merely recite the *Polaroid* factors and allege that they are met. Mot. at 15-17. Under the correct standard for dismissal under Rule 12(b)(6), the FAC remains deficient.

Unfair Competition. The Opposition adds nothing new regarding the unfair competition claim. It continues to fail for the reasons set forth in the Motion.

## II. PLAINTIFFS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON COUNT I.

The Opposition seeks summary judgment on Count I of the FAC, which is styled "Kartri's Ongoing Violation of this Court's Injunction" (FAC at p. 36). In addition to being procedurally improper under this Court's individual practices, this request is wholly without merit. First, the FAC's Count I rests on a claim of infringement of an invalid trade dress, and therefore must be dismissed for the same reasons as the trade dress claim. Second, this purported cause of action is merely a repackaging of Plaintiffs' request for contempt sanctions (Ezy Hang Dkt. 519). This Court has already denied Plaintiffs' request, holding that any claim against the Hang2it products must instead be "litigated with the formalities and rigor attendant to a plenary lawsuit." Ezy Hang Dkt. 529 at 2. The distinction is significant. *See, e.g., PRL USA Holdings, Inc. v. U.S. Polo Ass'n, Inc.*, 520 F.3d 109, 117–18 (2d Cir. 2008) (distinguishing between contempt proceedings and new infringement action).[5] Plaintiffs' Count I is an attempt to end-run around the Court's ruling.

Finally, Plaintiffs' request also fails because violation of a court order from another case is not a standalone cause of action. *See Johnson v. City of New York*, No. 16-CV-6426 (KAM) (VMS), 2018 WL 1597393, at *24 (E.D.N.Y. Mar. 31, 2018) ("[C]ivil contempt . . . cannot be a separate, stand-alone 'cause of action.'"); *Citadel Mgmt., Inc. v. Telesis Tr., Inc.*, 123 F. Supp. 2d 133, 153 (S.D.N.Y. 2000) (holding that defendant's violation of injunction was "an offense against the issuing court that is punishable with contempt and sanctions rather than an act that gives rise to an independent cause of action by [plaintiff]"). Plaintiffs cannot possibly be entitled to summary judgment in their favor on a cause of action that does not exist. Plaintiffs' request must be denied, and the purported "Count I" should be dismissed along with the rest of the FAC.

---

[5] The *Versace* case cited by Plaintiffs (Opp. at 22) to support the proposition that Kartri should "suffer a position less advantageous" in this new lawsuit as a result of having been found liable in the Ezy Hang case is a contempt case inapposite here, where the only question is the sufficiency of the FAC.

## III. COLLATERAL ESTOPPEL DOES NOT BAR LITIGATION OF THIS CASE.

Throughout their Opposition, Plaintiffs argue that collateral estoppel compels the Court to close its eyes to both the facts and the law on numerous issues. Plaintiffs' intensive reliance on collateral estoppel is misplaced, for several reasons. First, while collateral estoppel might limit the defenses that a party can raise, it cannot eliminate the requirements of the Federal Rules of Civil Procedure. A complaint that fails to plead each element of a cause of action is still deficient.

Second, Kartri is *not* "collaterally estopped" from raising issues that "it had every opportunity to raise … in *Kartri I*, but did not" (Opp. at 15). Rather, "collateral estoppel does *not* bar a litigant from subsequently pursuing issues that were not raised in the first proceeding, but 'could have been.'" *Flaherty v. Lang,* 199 F.3d 607, 612–13 (2d Cir. 1999) (internal citation omitted) (emphasis added). Kartri has every right to assert defenses in this new litigation.

Finally, "changes in facts essential to a judgment will render collateral estoppel inapplicable in a subsequent action raising the same issues." *Montana v. United States*, 440 U.S. 147, 159 (1979). Collateral estoppel therefore cannot apply to issues that must be evaluated as of a particular time. For example, as explained in the Motion, the issue of a trade dress's distinctiveness must be evaluated as of "the date of *the alleged infringement*." Mot. at 13, citing Ezy Hang Dkt. 501 at 62. The dates of "the alleged infringement" in this case and in the Ezy Hang case—facts "essential to" that determination—are not the same. Likelihood of confusion, too, turns on the particular products at issue in the lawsuit as well as the market conditions at the time. *See Plus Prod. v. Nat. Organics, Inc.*, No. CV 81-1798, 1984 WL 33, at *1–2 (E.D.N.Y. Feb. 3, 1984) (prior determination of likelihood of confusion not appropriate for collateral estoppel due to changes in "markets, consumers, volume of business and advertising of the parties;" also noting that offensive use of collateral estoppel is disfavored because it "encourages the plaintiff to bring additional actions because he can prevail on the grounds of the earlier decision").

And collateral estoppel cannot apply to the standing issue in this case (Opp. at 6-7). Some of the Plaintiffs were not a part of the prior action at all, and Plaintiffs have acknowledged that since the time of the prior litigation changes have occurred to fundamentally alter the various parties' claimed rights and relationship to the purported trade dress they wish to assert.[6] *See CIT Bank, N.A. v. Jach,* No. 15-CV-5814(KAM)(RLM), 2019 WL 1383850, at *7–8 (E.D.N.Y. Mar. 27, 2019) (no collateral estoppel because "the issue of standing in the present action is distinct from the issue of whether plaintiff had standing as of . . . the date it commenced the Second Action;" collecting authorities showing that collateral estoppel does not apply to standing question following a "change in circumstances".).

Collateral estoppel is not an absolute right, but rather, an equitable doctrine which the court has "broad discretion" in determining whether or not to apply. *See In re: Am. Express Anti-Steering Rules Antitrust Litig.*, No. 08-CV-2315 (NGG)(RER), 2016 WL 748089, at *5 (E.D.N.Y. Jan. 7, 2016) (setting forth considerations that can help guide a court's discretion, with supporting authorities). Plaintiffs cannot unilaterally invoke it to avoid evaluation of the merits of this case.

## IV. THE PUBLIC HAS THE RIGHT TO PRACTICE WHAT IS IN THE PUBLIC DOMAIN.

In response to the Motion's discussion of the intersection of patent and trademark law (Section II.E, explaining that material disclosed in expired utility patents may be freely practiced by the public and not claimed as a trade dress), the Opposition cites two cases which are inapposite because they involved *design* patents, rather than utility patents. Opp. at 22 & n.18 (citing *Krueger* and *Hubbell*). One even specifically distinguished design patents from utility patents in connection

---

[6] Specifically: the Ezy Hang case commenced in 2015, but the FAC describes a sequence of events involving transfers of rights and ownership dating from 2017 to 2022, including that one plaintiff "sold its license in the Intellectual Property Rights" to another, one "became the successor-in-interest to the rights previously held by" another, one "is the successor-in-interest" to another, and one "became" a parent to another and a "sister company" to another still. FAC ¶¶ 18-39.

8

with the discussion. *Krueger Int'l, Inc. v. Nightingale Inc.*, 915 F. Supp. 595 at 604 (S.D.N.Y. 1996) ("A design patent (unlike a utility patent) is granted for a product's non-functional, ornamental features."). The Supreme Court authority discussed in the Motion which prohibits parties from depriving the public of the subject matter of an expired **utility patent** (such as Plaintiffs') through trademark law remains unchallenged.

Plaintiffs' reliance on *Bonito Boats* is likewise misplaced. *Bonito Boats* reaffirmed that "in the case of an expired patent, the federal patent laws do create a federal right to 'copy and to use.' *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 165 (1989). The Court endorsed "limited regulations," "*which do[] not impermissibly interfere with the federal patent scheme*," in order to prevent source confusion. *Id.* (emphasis added). The Opposition's suggestion that *Bonito Boats* supports the use of trademark law to exclude competitors from making an invention disclosed in expired utility patents is erroneous.[7]

## V. THE PURPORTED TRADE DRESS IS INVALID AS A MATTER OF LAW.

Plaintiffs argue that collateral estoppel and prior determinations prevent the Court from holding the purported trade dress invalid as a matter of law. Opp. at 6. As set forth in Section III *supra,* Plaintiffs' reliance on the Ezy Hang case is misplaced. Kartri respectfully notes that the merits of its argument are unrebutted. Plaintiffs' alleged trade dress is both functional and generic.

---

[7] Plaintiffs have apparently abandoned the argument alluded to in the FAC (¶ 259) that the holding of *Sears* applies only to the pre-emption of state laws rather than to Lanham Act claims. In an abundance of caution Kartri will address this issue. The Supreme Court's positive declarations on the topic (*e.g.,* "on the termination of the patent *there passes to the public the right* to make the machine," *Singer Mfg. Co. v. June Mfg. Co.,* 163 U.S. 169, 185 (1896)) are not limited to state law. And in *Scott Paper,* the Court held that because on expiration of a patent the public "becomes entitled to share in the good will which the patentee has built up in the patented article or product," a patentee could not register—through *federal* trademark law—"any particular descriptive matter appearing in the specifications, drawings or claims of [an] expired patent." *Scott Paper Co. v. Marcalus Mfg. Co.,* 326 U.S. 249, 256 (1945). The authority cited in the Motion at pp.22-23 is not limited to state laws alone.

## VI. THERE ARE GAPS IN PLAINTIFFS' PLEADINGS CONCERNING STANDING.

The addition of eight (8) more plaintiffs may have remedied some of the standing-related issues identified in the Motion, but defects remain. This is because alleging damage is necessary *but not sufficient* to establish standing to bring a common law trade dress claim—an interest in the mark at issue must also be alleged. *The Christopher D. Smithers Found., Inc. v. St. Lukes-Roosevelt Hosp. Ctr.,* No. 00 CIV. 5502 (WHP), 2001 WL 761076, at *4 (S.D.N.Y. July 6, 2001) ("While a plaintiff need not be the owner of a mark in order to assert a section 43(a) infringement claim, the plaintiff must have some discernable interest in the mark to have standing to sue."); *Int'l Media Films, Inc. v. Lucas Ent., Inc.*, 703 F. Supp. 2d 456, 466 (S.D.N.Y. 2010) (requiring "ownership or proprietary interest" in unregistered mark for standing).

Plaintiff Keeco LLC is presently alleged only to have recently been made a "sister company" to another plaintiff—there are no allegations of any interest in the asserted trade dress. FAC ¶ 33.[8] Standing for plaintiff Keeco LLC is therefore still not pled. With regard to the other plaintiffs, if the Court considers the corporate structures alleged in the FAC sufficient to plausibly plead an interest in the purported trade dress at this stage, Kartri will explore the issue in discovery and may respectfully move to dismiss for lack of standing at a later time.

## CONCLUSION

For the reasons set forth above, in the Motion, and in the Letter, Kartri respectfully submits that Plaintiffs' Complaint should be dismissed, with prejudice, in its entirety, and Plaintiffs' purported Trade Dress should be held invalid as a matter of law.

---

[8] Oddly, the allegations in the original Complaint differed significantly from the FAC: they identified Keeco LLC as "the exclusive licensee of HSNA for the intellectual property in, *inter alia*, the field of shower curtains for sales to hospitality channels" and "the successor-in-interest to the intellectual property rights previously licensed by HSNA to [third parties and other plaintiffs]." Dkt. 1 at ¶¶ 9-10.

Dated: 05/25/2023

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By:     */s/ Patrice Jean*
       Patrice P. Jean
       Emma L. Baratta
       Lynn M. Russo

One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
patrice.jean@hugheshubbard.com
emma.baratta@hugheshubbard.com
lynn.russo@hugheshubbard.com

*Attorneys for Defendant Kartri Sales Co., Inc.*