Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office:+1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

**Patrice P. Jean**
Direct Dial: +1 (212) 837-6264
patrice.jean@hugheshubbard.com

# Hughes
# Hubbard
# &Reed

October 6, 2023

**BY ECF**
Hon. Paul A. Engelmayer
United States District Court for the Southern District of New York
40 Foley Square, New York, NY 10007

Re:     ***Keeco, LLC, et al. v. Kartri Sales Company, Inc.* – 1:23-cv-02003 (PAE)**
**(SDA) (Rel. 1:15-cv-10154 (PAE) (SDA)).**

Dear Judge Engelmayer:

We write as counsel for Kartri in the above-captioned matter, pursuant to the Court's Order of September 28, 2023. The Court indicated that it is likely to defer consideration of Kartri's outstanding Motion to Dismiss in this case until after the appeal of related case 1:15-cv-10154 (PAE) (SDA) (the "Focus Case") is resolved, and at Plaintiffs' request is considering requiring a bond of Kartri. The Court's Order directed Kartri to address "both whether a bond is warranted, but also, assuming that a bond is to be ordered, what the bond's size and terms should be."

Kartri responds that a bond is in no way warranted, and that there are no possible "size" or "terms" that could make imposition of a bond appropriate.

**A Bond Is Fundamentally Inappropriate**. The "primary purpose" of the bonds authorized by LR 54.2 is to ensure that, in the event costs are awarded, "whatever assets a party *does* possess will not have been dissipated or otherwise have become unreachable." *Selletti v. Carey*, 173 F.3d 104, 112 (2d Cir. 1999) (emphasis in original). Such bonds "**may not** be used as a means to" bar a less-wealthy litigant from litigating its case. *Id.* (emphasis added). Moreover, it is not ordinary to require bonds of defendants at all. *See Pfizer, Inc. v. Y2K Shipping & Trading, Inc.*, 207 F.R.D. 23, 25-26 (E.D.N.Y. 2001) (noting that "virtually all" bonds awarded are against plaintiffs, adding: "The situation is entirely different [] when it is the *plaintiff* who seeks to impose on a defendant of modest means the obligation to post a bond to cover the plaintiff's potential costs and attorneys' fees, the extent of which are often largely within the plaintiff's ability to control. In such a situation the court must guard against the transformation of this tool into a potentially formidable weapon for forcing a defendant into submission.") (emphasis in original). Plaintiffs here ask the Court to peremptorily order an enormous, onerous bond from another company, without showing evidence that any bond is necessary, and without even having shown that they can plead the required elements of any cause of action. Contrary to Plaintiffs' portrayal of this request as routine, ordering such a bond from a solvent American defendant at the outset of a case is extraordinary. Kartri has found no case, and Plaintiffs have certainly identified none, where it has occurred.

***Selletti* Factors Do Not Favor a Bond.**  Not only is this case a fundamentally inappropriate situation in which to require a bond, but also, contrary to Plaintiffs' arguments, analysis of the factors articulated in *Selletti* would not result in imposition of a bond.  Specifically:

(1) Kartri's status as a "family-owned business" "with fewer resources than Focus" in no way suggests it could not pay some future costs order.  Nor is there any showing that the judgment in the Focus Case will leave Kartri unable to pay future costs—as Plaintiffs know, a supersedeas bond has already been supplied to secure that judgment as the appeal proceeds, and Kartri continues to run its business.  (2)  Contrary to Plaintiffs' argument that Kartri qualifies as a "foreign" litigant in this analysis, "foreign" in this context means "[n]on-presence in the United States" (*Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238, 244–45 (2d Cir. 2006)) rather than from a different American state.  Kartri is located in Pennsylvania, where it has been operating since 1975.  To the extent the "foreign" factor is intended to account for "a defendant's possible disappearance" (*Mohamed v. Rajoub*, No. 05 CIV. 8335 (LAP), 2008 WL 194746, at *3–4 (S.D.N.Y. Jan. 17, 2008)), it is not implicated here.  (3)  Plaintiffs' complaint has not yet been adjudged sufficient, Kartri has not answered, and no evidence is before the Court.  As such, the Court "cannot ascertain Plaintiff's likelihood of success on the merits" at this time.  *Campanella v. BAC Home Loans Serv., LP*, No. 1:10-CV-0683 (GTS/DRH), 2010 WL 2775865, at *2 (N.D.N.Y. July 13, 2010).  (4 & 5) Plaintiffs' projection of "significant discovery and forensic efforts" as well as "substantial" legal costs is unsupported speculation.  This is a new proceeding, different counsel and even some different parties.  This case asserts *one* unregistered trade dress, against a product that has only come into being within the last few years.  The cost of the Focus Case, a seven-and-a-half-year litigation in which Plaintiffs asserted three utility patents, one (now-cancelled) design patent, registered and unregistered trademarks, and an unregistered trade dress, is wholly irrelevant.  (6)  There has been no violation of any court order necessitating security.  The Court's comment in the Focus Case that Plaintiffs have "previewed" some future showing they hope to make about the as-yet unlitigated Hang2it product purportedly violating an infringement-related injunction is not relevant to the need for imposition of a bond to secure later costs.

**Plaintiffs' Cases Do Not Support Plaintiffs' Position**.  With the exception of *RLS*, where the foreign defendant *offered* to put up a bond in exchange for Plaintiff doing the same (*RLS Assocs., LLC v. United Bank of Kuwait PLC*, 464 F. Supp. 2d 206, 225 (S.D.N.Y. 2006)), each of Plaintiffs' cases endorsed the imposition of a bond *after* facts had been established showing that recovery of a likely cost award would later be difficult.  *Selletti* involved a plaintiff who alleged claims that were unsupported by "any concrete evidence," failed to litigate diligently, and had only $500 in identifiable assets.  173 F.R.D. at 97, 101.  *Klipsch* involved a "foreign company with few ties to the United States, [which] had shown itself to be a dissipation risk" and already had a $2.3 million unpaid sanctions judgment against it in the case.  *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 635 (2d Cir. 2017).  *Sea Trade* involved plaintiffs with "no assets or presence in the United States and . . . no apparent ability to pay the costs of litigation."  *Sea Trade Co. v. FleetBoston Fin. Corp.*, 2008 WL 161239, at *1-3 (S.D.N.Y. Jan. 15, 2008).  *Kensington* involved a foreign litigant who failed to comply with court orders, was refusing to pay a massive foreign judgment already rendered against it, and also had contractually obligated itself to pay the

opposing party's attorneys' fees. *Kensington Int'l, Ltd. v. Republic of Congo*, 2005 WL 646086, at *1 (S.D.N.Y. Mar. 18, 2005).[1]

**No Size or Terms Could Make a Bond Appropriate**.  For the reasons stated above, a bond is wholly inappropriate in principle, and there are no terms that would make it acceptable. Moreover, as also explained above, the figure proposed by Plaintiffs bears no relationship to the reality of this case.  An alternative figure should not be invented out of thin air.  *See, e.g., Spin Master v. Aciper*, No. 19-CV-6949 (VSB), 2020 WL 6482878, at *6 (S.D.N.Y. Nov. 4, 2020) (denying bond where "I would be unable to determine the appropriate amount of that bond" due to lack of information, compiling cases where courts declined to "set some arbitrary bond amount" in the absence of information.).

**Plaintiffs' Request Should Be Denied**.  Plaintiffs' extraordinary request, unsupported by evidence or apposite legal authority, should be denied.  *See, e.g., Becker v. DPC Acquisition Corp.*, No. 00 CIV. 1035 (WK), 2002 WL 1144066, at *14 (S.D.N.Y. May 30, 2002) (declining to order defendant to post bond based on "Plaintiff's unsubstantiated allegations as to the Defendants' financial instability"); *Kamiel v. Hai St. Kitchen & Co. LLC*, No. 19 CIV. 5336 (PAE), 2022 WL 1591580, at *5 (S.D.N.Y. May 19, 2022) ("Absent a sufficient factual basis on which to predicate a bond order, the Court declines to impose one," rejecting plaintiff's unsupported assertion that defendant "has already shown a propensity towards saying whatever he deems necessary to get out of paying.").

Discovery has not opened, and Plaintiffs have not proffered evidence of any risk of dissipation of Kartri's assets.  Further, until the Court rules on the outstanding Motion to Dismiss and holds that the elements of some cause of action have in fact been pled, it is not even yet time for Kartri to answer the Amended Complaint.  It would offend due process for the Court to require a bond under these circumstances, and it is not supported by any case authority.  Kartri respectfully notes that if the Court is concerned that delay presents risk of prejudice to Plaintiffs or is otherwise undesirable, then delay could be eliminated by adjudication of the Motion to Dismiss.

Respectfully submitted,

Patrice P. Jean
Partner

cc:      Morris E. Cohen, Esq. (via ECF)

---

[1] The bond ordered in the *Kensington* case was challenged, and the challenge reviewed as a petition for mandamus. *Kensington Int'l Ltd.*, 461 F.3d at 244–45.  Judge Preska's analysis was upheld as "reasonable and supported by evidence," after review of the facts and circumstances that underlay her determination.